## CATHARINE E. COLLINS, Respondent, v. CHARLES E. COLLINS, Appellant.

To authorize the allowance of alimony *pendente lite,* in an action for divorce, the existence of the marital relation must be either admitted or there must be proof thereof satisfactory to the court; the *onus* is upon the applicant to establish this fact with a reasonable degree of certainty.

Where, at the time of the alleged marriage, the applicant believed herself competent to marry, but in fact was under a disability rendering the marriage void, which disability subsequently ceased, proof of cohabitation, thereafter, without any new marriage contract, and in reliance simply on the validity of the original marriage, is not satisfactory proof of a valid marriage for the purposes of such application.

Where, at the time an action for divorce is instituted, the parties are living separate and apart, in pursuance of articles of separation, and suitable provision has been made by the husband for the separate maintenance of the wife, alimony *pendente lite* should not, as a general rule, be allowed.

Such provision, however, does not prejudice an application on the part of the wife to be provided with means to prosecute the action; this will be granted if she is otherwise entitled, and has not sufficient means of her own.

When the wife has sufficient means of her own, temporary alimony is not allowable; this is not a matter of discretion, but a settled principle of equity.

SICKELS—VOL. XXXV.      1

Statement of case.

In an action for divorce the complaint alleged the marriage of the parties in California, August 16, 1853. The answer denied any legal marriage; it admitted that a marriage ceremony was performed, but alleged that plaintiff, at the time, had a husband living; that she claimed to have obtained a divorce in California; but that the decree was void for want of jurisdiction, as her said husband was a resident of New York, was not in California, and was not served with process and had no notice of the action. On application for alimony *pendente lite*, plaintiff produced a copy of the decree of divorce which was granted because of wilful and continued desertion and habitual intemperance. The decree did not show that the defendant was a resident of California, that he was served with process in any manner, that he appeared, or that the court ever acquired jurisdiction over him. The complaint therein alleged the marriage to have been contracted in New York; that plaintiff had been a resident of California for six months. An affidavit of plaintiff, contained in the judgment-roll, alleged that said defendant was a transient person, having no fixed home; that he was in California when last heard from, about two months previous. An order was made thereon that notice of the suit be given to the defendant therein by publication, and there was an affidavit of publication. Opinions of California lawyers were read on the motion, on the part of the defendant here, to the effect that the proceedings were not in accordance with the laws of California, and that under those laws the judgment was void. No proof was presented by plaintiff in answer to this, or to the allegations in the answer. *Held*, that the proofs did not sufficiently establish the marriage to authorize an allowance for alimony.

Plaintiff made affidavit that, believing in the validity of the California divorce, she married defendant, and lived with him as his wife until 1868; that she was informed and believed her former husband was killed in 1856; and she produced the affidavit of another to that effect. *Held*, that, in the absence of any allegation to that effect, it must be assumed that no new marriage contract was entered into after the death of plaintiff's first husband, but that the parties continued to cohabit, relying on the validity of the marriage in 1853.

It appeared that, six months prior to the commencement of the action, the parties entered into articles of separation, under and in pursuance of which defendant paid to plaintiff $5,000, and transferred to trustees certain real estate for her use, which she agreed to accept in full satisfaction for her support and maintenance and all right of dower and alimony. The provision thus made was found to be a suitable and proper one, considering defendant's circumstances. The case had been pending for more than ten years, without any attempt on the part of either party to bring it to trial. *Held*, that plaintiff was entitled to an allowance for the expenses of the litigation, notwithstanding the said articles, if she was the wife of defendant, and he had given her cause to seek a divorce, and was destitute of means of her own; but was not entitled to any allowance for alimony; that looking at the application as it stood at the time it was first made (which was soon after the com-

mencement of the suit), it should have been denied both for alimony and allowance; but as defendant had permitted the controversy to continue without taking measures to bring the cause to trial, an allowance for counsel fees was proper.

(Argued December 9, 1879; decided January 27, 1880.)

APPEAL from an order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term, allowing the plaintiff alimony and $250 counsel fees.

This was an action for divorce *a vinculo.*

The case, upon a former appeal, is reported in 71 N. Y., 269.

The facts are sufficiently stated in the opinion.

*Cephas Brainerd,* for appellant. As the marriage between the parties was directly put in issue, and no evidence of any value introduced to sustain plaintiff's claim for alimony the application should have been denied, (*Carpenter* v. *Carpenter,* 19 How., 539; *N. Y. and Harlem R. R.* v. *Mayor,* 1 Hilton, 587.) The separation agreement which releases the defendant from all claims for future support or alimony is valid and binding, and so long as it stands executed in all its parts, by the defendant, it is conclusive against this application. (*Rose* v. *Rose,* 11 Paige, 166; *Morrell* v. *Morrell,* 2 Barb. S. C. R., 480; *McDonough* v. *McDonough,* 26 How., 193; *Carson* v. *Murray,* 3 Paige, 483; *Wallace* v. *Bassett,* 41 Barb., 92.) No question of dower arises in this case, as plaintiff got a deed of all defendant's real estate under the agreement. (*Townsend* v. *Townsend,* 2 Sand., 711.) So long as she retains that her mouth is closed. (*Bruce* v. *Davenport,* 3 Keyes, 472; *Moyer* v. *Shoemaker,* 5 Barb. S. C. R., 319; 2 Bish. [M. and D.], § 375; 2 id., § 380; *Orr* v. *Orr,* 5 Bush., 156; *Oliver* v. *Oliver,* 5 Ala. [N. S.], 75; *Coles* v. *Coles,* 2 Md. Ch., 341; see, also, *Wright* v. *Wright,* 6 Texas, 29.) The plaintiff's application should be denied as she is not shown to be in need of money. (*Kock*

v. *Kock*, 42 Barb., 515; *Worden* v. *Worden*, 3 Edw., 388.) If the plaintiff had desired a trial of this action on the merits, it could have been had years ago, and as none has ever been sought no alimony should be allowed. (*Fowler* v. *Fowler*, 4 Abb., 441.) The payment already made to plaintiff by defendant should be considered under the circumstances presented here. (*Rose* v. *Rose*, 11 Paige, 166; *Morrell* v. *Morrell*, 2 Barb., 480; *McDonough* v. *McDonough*, 26 How., 193.)

*Samuel Hand*, for respondent.

RAPALLO, J. On the former appeal in this action[*] the principal ground upon which the order granting alimony was reversed was, that the relation of husband and wife was neither admitted nor satisfactorily shown to exist between the plaintiff and defendant. It was also held that the want of any denial of the counter-charges, made against the plaintiff, in the defendant's answer, was a good ground for denying her application. The further objection that the agreement for a separation, whereby provision was made for the support of the plaintiff, was a bar to an application for alimony, was not passed upon.

The order of reversal then made stated that it was without prejudice, and by this was intended that it was without prejudice to a renewal of the application, if further facts could be shown whereby the objections to the first order might be obviated.

A new application was accordingly made to the court below, and on this new application papers were introduced, which were not before us on the former appeal. These papers obviate the objection of the want of a denial of the counter-charges made against the plaintiff; and the only points now remaining to be considered, are whether they supply the required *prima facie* proof of a valid marriage between the plaintiff and the defendant, and whether the

---

provision made by the defendant, under the agreement for a separation, is a bar to her application for alimony.

On the former appeal the position of the parties, and the facts, in relation to the question of marriage, were as follows :

The plaintiff in her complaint alleged that she was married to the defendant on the 16th of August, 1853, at Sacramento, California. The defendant in his answer alleged that a marriage ceremony was performed, between him and the plaintiff at the time and place alleged ; but denied that he was on said day or at any time legally married to the defendant, and that at the time said marriage ceremony was performed, the plaintiff had a husband living named James Hoagland, who resided in the city of New York, to whom she was lawfully married in said city of New York, on the 9th of November, 1845, and which marriage was in force on and after the date of her alleged marriage to the defendant.

The answer further alleged that the plaintiff claimed to have obtained a decree of divorce from Hoagland, in California, on the 12th of August, 1853, but that at the time of the institution of the proceedings for such divorce and for several years immediately prior and subsequent thereto Hoagland was a resident of the State of New York and did not reside, and was not, in the State of California. That Hoagland was not served with process in said action for a divorce and had no notice thereof, and that the California court never acquired or had any jurisdiction over him or the subject-matter of the action, or any jurisdiction to render the decree, and that it was void ; and the defendant, therefore, denied that the plaintiff was ever married to him or was his wife.

No answer was made by the plaintiff to any of these allegations, and, as the case was presented to us, there was no proof of any valid marriage between the parties. It is an established rule, that the existence of the marital relation must be either admitted, or if denied that there must be proof of it satisfactory to the court, to authorize the allowance of alimony. (*Brinkley* v. *Brinkley,* 50 N. Y.,

184.) There clearly was no admission in the present case, and no proof whatever was presented on the part of the plaintiff with reference to the matter, or in answer to the allegations that the divorce from Hoagland was void and the plaintiff was incompetent to marry.

On the present application papers are presented bearing upon those questions. They consist of a copy of the decree of divorce rendered in 1853, from which it appears that it was rendered upon the report of a referee to take proof of the facts alleged in the plaintiff's complaint, and for the cause of wilful and continued desertion by the defendant for over three years, and habitual intemperance. The decree, however, does not state that the defendant was served with process in any manner, or that he appeared in the action or that the court ever acquired jurisdiction over him in any manner. The complaint contains no allegation as to the residence of Hoagland, nor is there anything to show that he ever was a citizen of California. It alleges that the marriage was contracted in New York in 1845, and that the plaintiff has been a resident of California for six months immediately preceding her application, which is verified under date of March 30, 1853. The judgment-roll contains an affidavit of the plaintiff, in which she states that the defendant is a transient person having no fixed and permanent residence. That he was in California when last heard from about two months previously, first came there about three years before—returned to the Atlantic States; came back in August last, but where he was at the time of making the affidavit, or whether he was still in the State, plaintiff had no means of knowing. On this affidavit an order was made that notice of the suit be given to the defendant by publication for the period of three months in the San Francisco Whig. An affidavit of publication is contained in the roll and no other proof of any service, and no appearance, is contained therein. A default was entered against the defendant as a non-resident, on this proof of publication, and the decree follows.

Opinions of California lawyers were read on the motion to the effect that the proceedings were not in accordance with the laws of California, and that under those laws the judgment was void.

No proof was presented by the plaintiff in answer to the allegations of the defendant respecting the decree of divorce, or in support of its legality, even under the laws of California, and upon the question of the legality of the California divorce the facts stand substantially as they did upon the former appeal.

Since that time the case of *Hunt* v. *Hunt* (72 N. Y., 217) has been decided in this court, and it is supposed that it is an authority in favor of the validity of the California divorce. It proceeds, however, upon grounds which do not appear in the present case. In that case both husband and wife were domiciled in Louisiana, where the action was begun and judgment rendered, and it was held that they were subject to the laws of that State, including those for the substituted service of process, and that it was within the power of the State to fix, by judicial proceedings, the status of its own citizens. The decision was thus limited to cases where both parties were subject to the jurisdiction and laws of the State in which the divorce was rendered, and it was kept strictly within those bounds in the subsequent case of *People* v. *Baker* (76 N. Y., 78). In that case the defendant was indicted for bigamy, and set up as a defence a decree of divorce rendered against him in Ohio, in an action there brought by his first wife. The record showed proof of service of process by publication only, and he had not appeared, and it did not appear that he was domiciled in Ohio, although the marriage had been contracted there. The divorce was held void, and a conviction for bigamy in having married a second time in this State, while his first wife was living, but after the pretended divorce, was sustained. In the case of *Mann* v. *Mann* (75 N. Y., 614), an application for alimony and counsel fees was made by the plaintiff in an action for a limited divorce, and the marriage

was denied by the alleged husband. It appeared that the plaintiff, before her marriage to the defendant, had been married to one Wheelock, and afterwards went to Indiana and there obtained a decree of divorce against Wheelock, on service by publication only, and immediately afterwards married the defendant in Indiana. The Supreme Court held that the legality of this marriage was too questionable to justify the allowance of alimony, but allowed a counsel fee to enable the wife to try the question of the validity of the second marriage. It having taken place in Indiana, where the divorce was granted, the question was in the case whether if the divorce was valid as to her in Indiana, though void as to her husband, it might render her competent to marry again in that State, and the court allowed her to try that question, though the situation would be rather anomalous of a woman with two husbands, both legally entitled to exercise marital rights. That decision was affirmed in this court. In the present case the same question is presented, and the decision in *Mann* v. *Mann* would be an authority for sustaining the allowance of a counsel fee and disallowing alimony. In the present case, however, there is the additional feature that the validity of the divorce as to either party, even in California, is challenged on grounds which seem quite substantial, and no answer whatever is made to the objection specified in the opinions of the California lawyers read on the motion.

On the question of the validity of the California divorce the case is not fortified by the additional papers which have been introduced into the case. But the counsel for the plaintiff calls attention to a statement in the affidavit of Mrs. Collins, that she is informed and believes that Hoagland, her former husband, was killed on board the United States steamer San Jacinto, at Whampoe, in China, in the year 1856, and also to an affidavit of James M. Boyd, on information and belief, to the same effect. It is also stated in the affidavit of Mrs. Collins that, believing in the validity of the California divorce, she married the defendant in 1853,

and lived with him as his wife, in California and New York, until 1868, and the point is now made that even if the invalidity of the divorce be conceded, her disability to marry ceased on the death of her first husband, in 1856, and her subsequent matrimonial cohabitation with the defendant is equivalent to a marriage with him after the removal of her disability.

This is a point of great importance, and presents many considerations. It has been held in several cases, in which property rights only were concerned, that the presumption of a subsequent marriage can be indulged in such a case. Where the union is in its origin meretricious, the weight of authority is to the effect that the same condition is presumed to continue, unless there is some evidence of a change, and the mere fact that the parties subsequently hold themselves out as married, is not sufficient for that purpose, but it has been held that where the connection was begun under a contract of marriage supposed to be legal, though in fact void, in consequence of a disability of one of the parties, yet after the removal of the disability a subsequent marriage may be presumed from acts of recognition by the parties of each other as husband and wife, and from continued matrimonial cohabitation and general reputation. (*Wilkinson* v. *Payne*, 4 T. R., 468; *Rose* v. *Clark*, 8 Paige, 574; *Clayton* v. *Wardell*, 4 N. Y., 230.)

The cases referred to are however cases involving rights of property only, and the doctrine has not been applied in this State, so far as I can find, to actions between husband and wife, for a divorce. Although as a general rule, for ordinary purposes, actual marriage may be presumed from matrimonial cohabitation, and the acknowledgments of the parties that they are husband and wife, there are cases in which direct evidence of marriage is required. Not indeed of a marriage ceremony, but of the actual contract between parties competent to marry, to be husband and wife, where, as in this State, such a contract is not required to be accompanied by any formalities. The cases generally mentioned

as calling for such direct proof, as contra-distinguished from mere proof of matrimonial cohabitation, recognition and general reputation, are prosecutions for bigamy and actions for *crim. con.* But many others are mentioned in the authorities, and some of them lay down the proposition generally, that direct evidence is required in all criminal or *quasi* criminal prosecutions ; or actions founded on the relation of marriage, and in others it is said that when the violation of the relation of husband and wife constitutes the guilt of the accused, such relation must be proved by direct evidence. The decisions of several of the States of the Union are at variance with each other, on the point whether direct evidence must be given in actions for divorce. The subject is discussed at considerable length in 2 Bishop on M. and D. ([4th ed.], §§ 266–276), and many authorities, English and American, bearing upon the question, are there cited, and the learned author confesses himself unable to decide the question upon authority, but strongly intimates his own opinion that direct evidence should be given. In a recent case, reported in the American Law Register, October, 1879 ([N. S.], vol. 18, p. 630, and note p. 639), there is a collation of numerous cases bearing upon the question of presumption of marriage from subsequent matrimonial cohabitation where the original connection was unlawful. The question is too important to render it proper to determine it finally on a mere motion for alimony. The onus however is upon the plaintiff to establish, with at least a reasonable degree of certainty, that she is the wife of the defendant, and it would seem that she should produce the best evidence in her power. She is a competent witness to prove the fact of marriage, and if any new marriage contract was entered into between her and the defendant, after the death of her first husband, she should have alleged it. In the absence of any such allegation on her part, we must assume that no new engagement was entered into, but that the parties merely continued to cohabit as before, relying upon the validity of the marriage in 1853, and the only question remaining is

whether such cohabitation, and the acknowledgments of the defendant, are sufficient ground for the interposition of the court to dissolve the supposed bond, in a case where it is shown to have been illegal and void when contracted.   The evidence clearly would not be sufficient to subject the plaintiff to a prosecution for bigamy, should she marry again during the life of Collins, and this action can serve very little purpose, except as a foundation for an application for alimony.   We do not intend now to finally pass upon the questions discussed, but we think the proof of a valid marriage, as it now stands, is far from satisfactory, even for the purposes of the motion.

The remaining question is whether the provision made for the plaintiff under the articles of separation, and the covenants therein made by the plaintiff, are a bar to her application for temporary alimony.   They certainly are not a bar to her application for a divorce, if she establishes her marriage and her charges against the defendant, nor do they prejudice her application to be provided with means to prosecute the action, if she is otherwise entitled and has not sufficient means of her own.   She alleges that she executed these articles under duress, but that question was fully litigated before the referee and he found against her, and the evidence we think fully warrants his conclusion.   Assuming that for the purposes of the motion the articles were properly executed their legal effect upon this application must be considered.

We do not find that the authorities cited sustain the proposition that a voluntary provision for the separate maintenance of a married woman is under all circumstances an absolute bar to her right to alimony.   On a final decree of divorce the sufficiency of the provision may be considered, and if it is adequate the wife is entitled to nothing further (Bishop on M. and D., § 375), and if inadequate the deficiency may be made up.   (Id.)   In *Rose* v. *Rose* (11 Paige, 166) it was held that after such a provision had been made by the husband the wife was not entitled to alimony *pendente lite*

unless she and her trustee surrendered or offered to surrender the voluntary settlement. When the grounds on which temporary alimony is awarded are considered, there is much reason for holding that where, at the time the action is instituted, the parties are living separate and apart, in pursuance of articles of separation, and provision has been made by the husband for the separate maintenance of the wife, alimony *pendente lite* should not, as a general rule, be allowed. The right to alimony of any kind is founded on the duty of the husband to support his wife, but this duty does not extend to affording her a separate maintenance, except in those cases where the law judges that she may live apart from him for her protection, in consequence of his wrong-doing. When it does so judge it must also judge that he shall maintain her while so living. When a suit for divorce is pending between husband and wife, it is legally improper for the parties to live together, whatever is to be the result of the suit. Even if the husband offers to support the wife in his own home, she should not accept the offer. (*Sykes* v. *Halstead*, 1 Sandf., 483.) The necessity thus arising from the pendency of the suit, that the wife should live apart from her husband is the basis of her right to a separate support *pendente lite* if she has no adequate means of her own. (Bishop on M. and D., §§ 369, 384.) If she has sufficient means of her own temporary alimony is not allowable.

In 1869 when this action was brought the plaintiff was living apart from the defendant, and had been so living for six months, in pursuance of articles of separation entered into between the parties in September, 1868, whereby they agreed to live separate and apart from each other during their natural lives and not to molest or interfere with each other, and each released the other from all rights in the property of the other and the defendant paid to the plaintiff $5,000 and agreed to convey certain real estate to a trustee for her use, and this provision the plaintiff agreed to take in full satisfaction for her support and maintenance and all dower, right of dower and alimony whatever. The referee

found that, considering the defendant's circumstances, the provision thus made was a suitable and proper one for the support of the plaintiff during the rest of her life, and the court at General Term, on the first hearing, after an elaborate review of the facts, seem to have concurred in this opinion and to have thought that the provision was equal to that ordinarily made by the court on a decree. The necessity for a separate maintenance did not arise from the institution of this action and the situation of the plaintiff was not changed thereby, except in so far as she became subjected to the additional expense of a litigation. She had the right, notwithstanding the articles, if she was the wife of the defendant, and he had given her cause, to seek a dissolution of the marriage tie, and if destitute of means of her own should be provided with the means of carrying on her suit, but under the circumstances we do not think that on general principles of equity she is, as the case now stands, entitled to more. The case has now been pending for more than ten years without any attempt so far as appears to bring it to trial. The right of the plaintiff to maintain the action is, to say the least, very doubtful, and the course of the proceedings leads very strongly to the inference that alimony *pendente lite*, and not the final decree of dissolution of the supposed marriage contract, has been the real object in view. It can hardly be supposed that the delay has arisen from necessity, for there has been an amount of litigation for ten years past on this question of temporary alimony, far exceeding in duration and expense, that involved in any ordinary action for a divorce, and a small portion of this expense devoted to the trial of the issue would have ended the controversy many years since. At the commencement of these proceedings aside from all other questions no case was made out for temporary alimony. The fact that a wife is destitute of means to carry on her suit and to support herself during its pendency is as essential as any other fact, to authorize the court to award temporary alimony. This is not mere matter of discretion, but a settled principle of

equity.   Now assuming that no question existed as to the marriage, and assuming that the articles of separation were not binding upon the plaintiff, and laying out of view the question whether the provision therein was sufficient for her permanent support, the fact remained, that she had, within little more than six months before instituting her action, received from the defendant $5,000 in cash, of which she had entire control, and unless culpably extravagant she must have been at the time amply provided with means of support and to carry on her suit.   Looking therefore at the application as it stood at the time it was made, it should, on the settled principles, governing such cases, have been denied, and the question of alimony left to be settled in the final decree.

Taking into consideration however that the defendant has permitted the controversy to continue without taking measures on his part to bring the cause to trial, and is thus in part to blame for the delay and expense which have been occasioned, we will affirm so much of the order as directs the payment of counsel fees.   So much of the order as directs the payment of alimony should be reversed, without costs to either party.

All concur.

Ordered accordingly.