WILLIAM S. LEEDS, Appellant, v. MARY E. JOYCE (or FREEDLEY), Also Known as MAY E. JOYCE and MAY J. LEEDS, Respondent.

First Department, July 14, 1922.

**Husband and wife — annulment of marriage on ground that wife had former husband living — parties were married before decree of divorce granted defendant from her former husband became final — plaintiff had knowledge of divorce action and parties lived together as husband and wife after decree became final — ceremonial marriage was validated as common-law marriage — amendment of answer to allege common-law marriage proper.**

The ceremonial marriage between the plaintiff and the defendant which was entered into before the defendant's divorce from her former husband became final, was validated as a common-law marriage, where it appears that the plaintiff had knowledge of the divorce proceedings; that the parties were advised, after the decree became final, to go through another ceremony, and that they did not do so but continued to live together at different places as man and wife for a period of about eight years.

Accordingly, in an action by the husband for annulment on the ground that the defendant had a former husband living at the time of the marriage, and that the former marriage had not been annulled or dissolved, a motion made by the defendant to amend her answer, so as to allege as a defense a common-law marriage between the parties, was properly granted.

APPEAL by the plaintiff, William S. Leeds, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 19th day of November, 1921, upon the decision of the court, rendered after a trial at the New York Special Term.

Plaintiff gives notice of intention to bring up for review an order entered in said clerk's office on the 11th day of August, 1921, granting leave to the defendant, upon certain conditions, to serve an amended answer.

*Frayer, Alden & Ehrhardt* [*Eugene Frayer* of counsel], for the appellant.

*H. L. Schaefer* [*Jacob J. Aronson* of counsel], for the respondent.

GREENBAUM, J.:

The action was brought for the annulment of the marriage, entered into between the parties on the 14th day of March, 1911, at Nashua, N. H. The theory of the complaint is that the defendant had been married to one Freedley prior to the time of her marriage with the plaintiff and that at that time Freedley was alive and that his marriage with the defendant had not then been annulled or dissolved.

An order was entered submitting two questions for trial by

jury, which were thereafter duly tried and which read as follows: "(1) Was Louis E. Freedley between whom and the defendant a marriage contract was entered into at Brookline, Massachusetts, on or about August 2nd, 1904, living at the time of the defendant's marriage to the plaintiff on March 14th, 1911? (2) If said Freedley were alive on March 14th, 1911, had his marriage to the defendant been annulled or dissolved prior thereto? "

The jury answered the first question in the affirmative and the second question in the negative. The case was thereafter brought on at Special Term for the completion of the trial and the defendant then moved in open court for leave to amend the answer so as to set up an affirmative defense of a common-law marriage between the parties. The motion was denied, but a mistrial was declared and leave given defendant to renew his motion at Special Term, Part 1. The motion to amend was thereafter granted upon condition that the defendant pay to the plaintiff a bill of costs to be taxed with which the defendant duly complied, and upon the condition that the verdict of the jury on the issues theretofore submitted to them stand with the same effect as if no amended answer had been served and that no retrial of said issues will be asked.

We find no convincing reason for disturbing the order allowing the amendment.

The testimony conclusively established that the plaintiff was fully cognizant of all the facts and circumstances in connection with the defendant's first marriage and her divorce from her former husband. Indeed, the evidence was that the plaintiff actively participated in assisting defendant to procure the divorce from her former husband. One Connelly, a Boston attorney, testified that he met the plaintiff for the first time at his office in Boston in the year 1910 or 1911, accompanied by the defendant, and then and there had a conversation with the parties concerning the divorce action which the defendant had brought against her former husband, in which she said that she was dissatisfied with her former attorney because he was too slow in pushing the case to trial; that he then and there telephoned to the former attorney who said that he was willing to withdraw from the case and that he, Connelly, was then retained and was given a retainer fee. He further testified that the trial of the divorce action occurred on March 13, 1911, and a decree *nisi* was granted in behalf of the defendant (plaintiff in that case) and entered; that after the trial he had a conversation with the plaintiff over the telephone and asked him to come to the court house, which he did; that plaintiff was then told by defendant in the presence of the witness and of the defendant's mother that the divorce had been granted; that defend-

ant asked plaintiff for some money which was due Mr. Connelly and that he gave her the money which she turned over to the attorney. He further testified as follows: " I cannot say just who asked the question, but I was asked when they could get married, and I told them this divorce would become absolute within six months unless for good and sufficient reason a judge would set the whole affair aside. Mr. Leeds then asked me whether or not they could get married in New Hampshire. I would not advise them either way on that. He said that he had been told by somebody it could be done."

As a matter of fact the parties were married at Nashua, N. H., by a justice of the peace on March 14, 1911. On their return from a trip to Europe in the fall of that year, defendant told the plaintiff that Mr. Connelly, her attorney, had called her up and told her that the divorce in the Freedley case had been made final and absolute and that the decree had been signed and that he had advised her to marry plaintiff over again, to which the plaintiff answered: " Why you are already my wife and I am your husband."

The parties thereafter uninterruptedly lived together on Staten Island for about three years, where defendant was always introduced as plaintiff's wife. They then moved to Convent avenue, New York city, where they lived together as husband and wife for four years in a leased apartment. After leaving their Convent avenue abode, the parties moved to Rutherford, N. J., where plaintiff purchased a house, and put the title thereto in his wife's name. They lived in Rutherford as husband and wife continuously up to October 15, 1919, and on the morning of that date plaintiff left the defendant. The issue of the marriage is a girl, born September 13, 1917, almost six years after the impediment to their marriage was removed.

Plaintiff testified that he discovered his marriage was not valid in October, 1919, but the trial court was justified in finding that such was not the fact.

In *Tracy* v. *Frey* (95 App. Div. 579, 583) the court said: " In the absence of proof, the presumption is of marriage arising out of cohabitation in the apparent relation of husband and wife, of the innocent and lawful character of such relationship and of the legitimacy of children which are the fruit of such a union."

In *Taylor* v. *Taylor* (63 App. Div. 231) Mr. Justice LAUGHLIN, writing says: " In a case like this where the intercourse between the parties originated in the honest belief that they were man and wife, evidence of less probative force should be accepted to establish a new marriage contract after the only obstacle to the validity of the former marriage was removed by the death of the former husband."

In *Campbell* v. *Campbell* (L. R. 1 H. L. Sc. 182) the facts were that Campbell eloped with the wife of one Ludlow and lived with her until his death in 1806. In the meantime, Ludlow had died in 1784. The question was whether Campbell was married to the woman between 1784 and 1788 when she bore a child to Campbell. Referring to the contention that because the relations of the parties were originally evil and must be deemed to have continued so, Lord WESTBURY: " I should undoubtedly oppose to that another, and, I think, a sounder, rule and principle of law, namely, that you must infer the consent to have been given at the first moment when you find the parties able to enter into the contract. The conclusion, therefore, that I derive, and which, unquestionably, is consistent with the language of the cases which have been referred to, is that the consent between these parties was given, and that the marriage, therefore, in theory of law, took place, at the time when, by the death of the first husband, they became competent to enter into the contract."

Lord CRANWORTH said: " We ought to infer, after their deaths, that at some time during the long period during which they lived together, and in some manner, however informal, they did that which they could do without any difficulty, viz., enter into an agreement to be and become married persons, and so to acquire for themselves and their children the status which the evidence satisfies me they wished to enjoy."

In *Matter of Wells* (123 App. Div. 79; affd., 194 N. Y. 548), at page 85 the court says: " It seems to me, in view of the decisions and authorities which have been referred to, that the rule ought to be that where one person is free to enter into the matrimonial relation, and does so in good faith, but the other party is incapable of entering into such relation because of a former wife or husband living, or other impediment, when such impediment is removed, if the parties continue matrimonial cohabitation, continue to introduce and recognize each other as husband and wife, and are so recognized by their relatives, friends and by society, it ought to be held that from such moment they are actually husband and wife, and that under such circumstances, it is of no importance that a formal agreement to live together as husband and wife was not entered into or that either did not know that the impediment to such an agreement had been removed, when in fact it had been so removed and both parties were competent to enter into the matrimonial state."

In 1 Bishop on Marriage, Divorce and Separation (§ 970) the author says: " If the parties desire marriage, and do what they can to render their union matrimonial, yet one of them is under

a disability, as where there is a prior marriage undissolved, their cohabitation, thus matrimonially, will in matter of law make them husband and wife from the moment when the disability is removed; and it is immaterial whether they knew of its existence, or its removal or not, nor is this a question of evidence."

An interesting case on this subject is *Travers* v. *Reinhardt* (205 U. S. 423), in which many authorities are collated and considered. At page 440, referring to the case before it, the court said: " We are of opinion that even if the alleged marriage would have been regarded as invalid in Virginia for want of license, had the parties remained there, and invalid in Maryland for want of a religious ceremony, had they remained in that State, it was to be deemed a valid marriage in New Jersey after James Travers and the woman Sophia, as husband and wife, took up their permanent residence there and lived together in that relation, continuously, in good faith, and openly, up to the death of Travers — being regarded by themselves and in the community as husband and wife. Their conduct towards each other in the eye of the public, while in New Jersey, taken in connection with their previous association, was equivalent, in law, to a declaration by each that they did and during their joint lives were to occupy the relation of husband and wife. Such a declaration was as effective to establish the status of marriage in New Jersey as if it had been made in words of the present tense after they became domiciled in that State."

Citations of many authorities in consonance with the foregoing views will be found in *Applegate* v. *Applegate* (118 Misc. Rep. 359).

There is no room for doubt upon the undisputed evidence that the parties after full knowledge of all the facts regarded themselves and held themselves out to be a lawfully married couple. This justifies us in finding that the parties after they knew the impediment to their marriage had been removed, deliberately agreed to continue living as man and wife and, therefore, the marriage may be treated as validated as a common-law marriage.

The Special Term has made no express finding as to the existence of a common-law marriage. Appropriate findings in accordance with the conclusions reached will be made by this court.

The judgment and order should be affirmed, with costs to respondent.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concur.

Judgment and order affirmed, with costs. Settle order and additional findings on notice.