# THE

# MISCELLANEOUS REPORTS

OF THE

# STATE OF NEW YORK

COMMENCING SEPTEMBER, 1926.

---

HARRY E. BAMBERGER, Plaintiff, v. MARGARET J. BAMBERGER, Defendant.

Supreme Court, Erie County, September 25, 1926.

Husband and wife — annulment of marriage — parties were married immediately after interlocutory judgment of divorce was granted defendant — said marriage was void when made — interlocutory judgment became final under its terms without further action — parties living together after impediment was removed became united by common-law marriage.

The plaintiff is not entitled to have his marriage to the defendant annulled on the ground that at the time of the marriage she had a husband living, since it appears that defendant procured an interlocutory judgment of divorce from her first husband a few days before her marriage to the plaintiff, that the plaintiff knew about defendant's prior marriage and about the divorce, that the interlocutory judgment became final by force of its own terms three months after its entry; and that, while the marriage between the parties was void when made, the evidence shows that after the impediment was removed, that is, after the interlocutory judgment became final, the plaintiff and defendant lived together for several years as husband and wife, and, therefore, it will be considered that they were united by common-law marriage.

ACTION to annul a marriage.

*Moses J. Bryman*, for the plaintiff.

*Sumner & Panzarella* [*W. Bartlett Sumner* of counsel], for the defendant.

NOONAN, J. This is an action to annul a marriage on the sole ground that the defendant had a husband living at the time of said marriage. It is equitable in character (38 C. J. 1351, 1357) and " the court has the right to withhold such relief unless the party asking it comes into court with clean hands." (*Pettit* v. *Pettit*, 105 App. Div. 312, 313; *Taylor* v. *Taylor*, 63 id. 231; *Berry* v. *Berry*, 130 id. 53.)

The only disputed question of fact herein is whether or not the

plaintiff knew of the previous marriage of the defendant. Upon the evidence I am fully satisfied that he did know about it, and also that she was getting a divorce and when it was granted, and that he furnished some of the money to pay her attorney in said divorce action. From the fact that he proposed to have the marriage ceremony performed in New Jersey, it may at least be inferred that he recognized that the legality of the marriage in this State might be questioned.

On April 15, 1920, the defendant was granted a divorce from her former husband, one John J. McTiernan, and the interlocutory judgment in that action, duly entered April 20, 1920, contained this provision: " Further ordered, adjudged and decreed that this judgment is interlocutory and that final judgment shall not be entered herein until the expiration of three months after the filing of a decision herein and this decree and after the expiration of said period of three months, final judgment shall be entered as of course on said decision and said decree and the *interlocutory judgment herein shall become the final judgment unless otherwise ordered by the court."*

Although the language of this paragraph is somewhat inapt, I think a fair construction compels the conclusion that, by its own terms, said interlocutory judgment became final in three months after its entry (Civ. Prac. Act, § 1176; *Matter of Albrecht,* 118 Misc. 737) and thereafter the defendant herein could enter into a valid marriage. (*McCullen* v. *McCullen,* 162 App. Div. 599, 602; *Leeds* v. *Joyce,* 202 id. 696; 38 C. J. 1351.)

After the interlocutory judgment in defendant's divorce action had been entered, the plaintiff took defendant to New York, N. Y., with the intent of going into the State of New Jersey to be married, but meeting some obstacles to the plan, they were married in New York, N. Y., April 22, 1920. Undoubtedly this marriage, entered into two days after the entry of the interlocutory judgment, was absolutely void at that time (Dom. Rel. Law, § 6, as amd. by Laws of 1915, chap. 266; *Stokes* v. *Stokes,* 198 N. Y. 301, 305; *Pettit* v. *Pettit, supra*), and no decree of the court was necessary to establish its invalidity before the interlocutory judgment became final (*McCullen* v. *McCullen, supra; Pettit* v. *Pettit, supra*), and also afterwards unless the subsequent conduct of the parties establishes a common-law marriage. Such a marriage is valid in this State. (*Matter of Ziegler* v. *Cassidy's Sons,* 220 N. Y. 98.)

When the parties were married they seemed somewhat doubtful as to the legality of the marriage and there was some talk about a second ceremony after the impediment ceased. The second ceremony was never performed, but after the interlocutory judgment

became final, the parties lived as husband and wife for over five years. Two children were born, one on April 9, 1921, and the other on October 19, 1923. Real property, which they still own, was deeded to them as tenants by the entirety. At all times they were known as a married couple in their community. The defendant did outside work for two or three years and a large part of her earnings were used for the living expenses of the family and paying for the home. The validity of the marriage was not raised until quite recently, and after disputes as to its validity the parties continued to live together and cohabit as husband and wife.

Upon all the evidence in the case, I am of the opinion that the parties hereto were united by a common-law marriage when this action was commenced and, therefore, it cannot be maintained. I think this conclusion is sustained by several well-considered cases that are exactly in point.

In *Rose* v. *Clark* (8 Paige, 574) the law applicable to the case is carefully stated in the headnote, as follows: " An actual marriage may be presumed from matrimonial cohabitation, and the acknowledgments of the parties that they are husband and wife. And even where such matrimonial cohabitation commenced between the parties under a contract of marriage which was void, a subsequent marriage after the removal of the disability may be presumed, from acts of recognition by the parties of each other as husband and wife, and from continued matrimonial cohabitation, and general reputation."

In that case Mrs. Rose undoubtedly had a husband living, from whom she was not divorced at the time of her marriage with Rose, but she lived with Rose eight years after the death of her former husband in the admitted relation of husband and wife, and Chancellor WALWORTH held that a common-law marriage had been established. That case was cited with approval in *Matter of Wells* (123 App. Div. 79), decided in the Fourth Department in 1908.

In the case of *Applegate* v. *Applegate* (118 Misc. 359) the defendant had a divorce action pending against her first husband. The plaintiff Applegate, her husband, was present when the testimony was taken on June 3, 1903, but neither an interlocutory nor a final judgment was ever entered in that divorce action. Four months after the testimony was taken the Applegates were married and lived together as husband and wife, and were generally recognized as such up to April, 1921. Mr. Justice LAZANSKY, in a very carefully considered opinion, held that a common-law marriage existed. That decision was handed down in March, 1922.

In July, 1922, the case of *Leeds* v. *Joyce* (202 App. Div. 696) was decided in the Appellate Division, First Department, and

later unanimously affirmed (235 N. Y. 620) without opinion. The law as stated in the headnote is as follows: " The ceremonial marriage between the plaintiff and the defendant which was entered into before the defendant's divorce from her former husband became final, was validated as a common-law marriage, where it appears that the plaintiff had knowledge of the divorce proceedings; that the parties were advised, after the decree became final, to go through another ceremony, and that they did not do so but continued to live together at different places as man and wife for a period of about eight years."

The only difference between the *Leeds* case and the one at bar is that they lived together as man and wife for eight years instead of five, and that they were advised to go through another ceremony after the disability was removed, while in the instant case both parties knew that it would be advisable to have a second ceremony.

In *Sorenson* v. *Sorenson* (122 Misc. 196) the defendant had a former husband living at the time of her second marriage. This former husband secured a valid divorce and the second husband, knowing the divorce had been secured, continued to live with his wife without any further marriage ceremony for about twenty-two years, and in a very carefully considered opinion Mr. Justice DIKE held that a common-law marriage existed between the parties.

Judgment may be entered herein in favor of the defendant, dismissing the complaint on the merits.