Louis Karameros, Plaintiff, *v.* Emma Luther, Also Known as Emma Monacchio, Also Known as Emma Karameros, Defendant.

Supreme Court, Trial Term, New York County, February 1, 1938.

*Pierce & Hopkins* [*George A. Hopkins* of counsel], for the plaintiff. *Nathan Feldman,* for the defendant.

HOFSTADTER, J. In this action to annul a ceremonial marriage entered into between the parties, the defendant wife has pleaded an affirmative defense setting forth facts tending to establish a common-law marriage. Upon the framing of an issue with respect to this defense, the parties stipulated to waive a jury and submit the matter to the court on an agreed statement of facts.

At the time the plaintiff and defendant first met, the latter was married to one Frank Monacchio. The plaintiff was aware of this marriage. In the spring of 1931 the defendant commenced divorce proceedings against her then husband and an interlocutory decree of divorce was duly entered on June 20, 1931. Before this decree became final the parties went through the form of a ceremonial marriage. The parties thereafter cohabited as man and wife for a period of five days, when the defendant went to Greece for a protracted visit, returning to this country in September, 1933. They then resumed cohabitation, and lived normally as husband and wife until marital difficulties arose in 1935. Throughout this entire period the parties acted in good faith under the honest, though mistaken, belief that they were validly married.

It is not disputed that the ceremonial marriage performed in Greenwich, on August 16, 1931, was a nullity due to the fact that the defendant at that time was already married. (Dom. Rel. Law, § 6.) Moreover, during the defendant's absence in Greece and prior to her return, section 11 of the Domestic Relations Law was amended so as to forbid any common-law marriage contracted after April 29, 1933.

The issue presented to this court is whether a common-law marriage exists between the plaintiff and the defendant. It is clear that any such marriage agreement must have been consummated between October 21, 1931, and April 29, 1933. Concededly the parties were wholly incompetent to enter into a common-law marriage at any time prior or subsequent to these dates.

Through an oversight the final decree of divorce was never entered. Upon becoming aware of this defect, the defendant procured an *ex parte* order directing that the decree be entered as of October 21, 1931. (*Monacchio* v. *Monacchio*, 247 App. Div. 810.) The defendant accordingly claims that the parties were married on the date when she became capable of becoming the wife of the plaintiff.

The court has assumed, only for the purposes of this determination, that the order of the Appellate Division is valid for all purposes, and that on the date indicated the defendant had full capacity to marry. The case of *Merrick* v. *Merrick* (266 N. Y. 120) throws some doubt on this assumption. It may be that as between the parties

the entry of the decree was valid for all purposes, but it is queried whether such an order may operate to create new rights as against a third party.

On October 21, 1931, the defendant was in Greece and the plaintiff in this country. The cohabitation prior to the defendant's departure, and subsequent to her return, while evidentiary, is irrelevant on the fact of the marriage. It is clear that but for the defendant's continuous absence and the consequent interruption of cohabitation, a common-law marriage would have existed. Continued cohabitation after the removal of the impediment to marriage may give rise to a common-law marriage, especially where it affirmatively appears that the parties originally regarded themselves as having been legally and validly married by virtue of a ceremony undergone in good faith. (*Matter of Haffner*, 254 N. Y. 238; *Bamberger* v. *Bamberger*, 128 Misc. 1, and cases cited therein.)

These decisions are not controlling on the facts presented by this record. The circumstance that the parties were separated on the date the marriage is alleged to have been contracted is decisive.

An agreement *per verba de præsenti* to take each other as husband and wife is essential to a common-law marriage. Mere open cohabitation and repute is merely evidentiary and in and of itself insufficient. (*Graham* v. *Graham*, 211 App. Div. 580.) In the final analysis the conduct and state of mind of the parties must be referable to the existence of an agreement to enter into the marital status at the inception of the relationship. While cohabitation is not required in all cases, to render the marriage valid where *specific* agreement is otherwise established (*Matter of Burke*, 143 Misc. 268; *Davidson* v. *Ream*, 97 id. 89; *Caujolle* v. *Ferrie*, 23 N. Y. 90), the court will not presume any such specific agreement where there is no cohabitation or reputation. The stipulation of facts precludes a finding of an actual agreement, for it is agreed that at all times the parties regarded the ceremonial marriage as valid. Neither party knew of any impediment at this time and consequently they may not be said to have elected to continue the relationship by any agreement *per verba de præsenti*.

The correspondence between the parties while they were separated cannot be construed as an agreement, for a proxy marriage is not recognized in this jurisdiction and no attempt has been made to establish the law in Greece.

The fact that the parties were not in each other's presence when the common-law marriage is alleged to have been established is determinative. In *Smith* v. *Smith* (194 App. Div. 543) the court stated, " to constitute a marriage *per verba de præsenti* the parties must be in each other's presence when the agreement is made."

(See, also, *Rodman* v. *Rodman*, 140 Misc. 642.) While this expression was uttered by way of dictum, it is the only reported statement as to the law applicable to the peculiar facts here presented, and in the absence of any contrary holding must be afforded controlling weight.

The question is answered in the negative. This determination has the same force and effect as a like determination of a jury, and the parties will proceed accordingly.