## In re ROSSIGNOT'S WILL.

(Surrogate's Court, New York County.   December 26, 1905.)

1. MARRIAGE—EVIDENCE—PRESUMPTION.

As between a nonceremonial unwitnessed marriage, attempted to be established by repute and the declarations of the deceased man, and a later formal marriage ceremony between the man and another woman, of which marriage there was issue, presumptions will not be indulged in, but the issue will be decided by weighing the evidence and giving effect to its preponderance.

2. SAME—COMMON-LAW MARRIAGE—EVIDENCE.

Evidence in a will contest *held* insufficient to show a common-law marriage with deceased, who subsequently had a ceremonial marriage with another, of which there was issue.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Marriage, §§ 79–89.]

3. SAME.

The evidence to establish a so-called common-law marriage should be clear, consistent, and convincing.

Contest of will of Louis Rossignot, deceased.   Findings made on the question of marriage of deceased.

H. A. Vien (Lemuel Skidmore, of counsel), for Acting Administrator.

Underwood, Van Vorst & Hoyt (J. Markham, of counsel), for Aimee Michel Rossignot.

W. H. Brearley, for General Guardian.

FITZGERALD, S.   The decedent died in August, 1904.   In the year 1888 his then wife obtained a decree of absolute divorce in this state.   On March 30, 1904, a formal religious marriage ceremony took place in Florida between him and the contestant, Aimee Michel.   A child of this marriage was born on December 24, 1904, and this child appears in the present proceeding, claiming to be the sole heir

112 N.Y.S.—23

at law and next of kin of the decedent. The contestant, Marguerite Baroux, alleges that the Florida marriage is void, for the reason that the decedent and she, by mutual consent and contract, and without any formal ceremony, became husband and wife on December 24, 1889, at the city of Newark, N. J. The very grave issue is therefore presented as to which of the contestants is the widow of the testator.

It is urged that the entire burden in the case is upon the contestant Michel; that, the relationship between the contestant Baroux and the decedent having been apparently matrimonial, the presumption that a valid marriage between them existed is raised with all of its force; and that such presumption can only be overcome with the clearest and most positive proof. It should be noted, however, that two equally powerful presumptions may well be predicated of the case of the other contestant, namely, that of decedent's innocence of the commission of the crime of bigamy, and that of the legitimacy of the child which was the issue of the Florida marriage. I am of the opinion that where, on the one hand, a nonceremonial, unwitnessed marriage is relied upon, attempted to be established by repute and declarations of one of the parties thereto who is dead, and, on the other hand, a later formal ceremony with another person is established beyond doubt, from which issue sprang, the court should not be hedged with presumptions, but should come to its conclusions by weighing the evidence and giving effect to its preponderance. The evidence of repute to establish the Newark marriage was mostly given by casual acquaintances of the decedent who saw him at a summer hotel between the years 1890 and 1896. It was shown by them that he introduced the contestant Baroux as his wife, and that he lived with her as his wife. One of these witnesses was visited by the decedent and the contestant Baroux in New York prior to the year 1897. Another met these two as late as the year 1901, while walking on Eighth avenue, New York City. It was further shown that this contestant and the testator at various times between the years 1890 and 1896 lived together as man and wife at No. 72 West Thirty-Fifth street, New York, where they had rooms. It was also shown by another witness that he was introduced to the contestant as decedent's wife in the city of Paris in the year 1895 or 1896.

Aside from the testimony bearing upon the question of repute, the only other evidence that tended to establish the marriage of decedent with the contestant Baroux was that furnished by the latter's sister, who swore to declarations decedent made to her to the effect that he had placed a ring on the finger of Miss Baroux at Newark on December 24, 1889, and that these two had then taken themselves for man and wife. As against this array of proofs, it was shown that the witnesses who thus testified on the question of repute were not the intimate friends of the decedent; that, so far as concerned these intimate friends, the decedent had at no time introduced the contestant Baroux to them as his wife; and that as a matter of fact he had never even brought her to one of the many social functions participated in by these friends and their families, but had come to them alone.

Setting aside the declarations of the decedent testified to by these friends showing the relationship between him and Miss Baroux to have been meretricious (since there may be some doubt as to their

admissibility in evidence), yet there are enough facts before me otherwise proved to lead to the inevitable conclusion that there was not the slightest belief entertained by the intimates of the decedent that he and the contestant Baroux were actually man and wife. Furthermore, so far as appears, none of the relatives of the decedent had any knowledge or information of this marriage, the existence of which, it is claimed, continued during a period of fourteen or fifteen years. Yet, as to the formal marriage, celebrated in March, 1904, five months before his death, the decedent was at pains in the month of May, 1904, to invite to luncheon a friend whom he had known for 30 years, together with his wife and daughter, so that these might be introduced to the contestant Michel as the wife of the decedent. It should be further noted that, with the exception of the testimony as to the casual meeting above referred to in the year 1901, no substantial or satisfactory testimony was introduced showing that the decedent and the contestant Baroux lived together as man and wife subsequent to the year 1898. Certainly during three or four years prior to decedent's death she conducted a business of her own under her maiden name. No explanation of any kind was vouchsafed why the chain of apparent matrimonial relationship thus came to a sudden ending.

Our courts have often expressed their suspicion upon the validity of so-called common-law marriages. The evidence to establish such a marriage should be clear, consistent, and convincing. A careful analysis of the testimony in this case forces the conclusion that the weight of evidence bears against the contention made by the contestant Baroux. The evidence of her sister I feel compelled to reject. She naturally is biased and interested in the success of her sister's contention, and her testimony is incompatible with that of witnesses whose credibility cannot be ignored or disregarded.

I find that the decedent's marriage with Aimee Michel was a valid one, and that she is the widow of the decedent.