(70 Misc. Rep. 361.)

### JOHANNESSEN v. JOHANNESSEN.

(Supreme Court, Special Term, New York County. January, 1911.)

1. MARRIAGE (§ 57*)—ANNULMENT.
    Defendant, in an action for a separation, cannot have the marriage annulled on the ground that plaintiff had a living husband when she married him, where such matter was not pleaded as a counterclaim, as required by Code Civ. Proc. § 500.
    [Ed. Note.—For other cases, see Marriage, Dec. Dig. § 57.*]

2. MARRIAGE (§ 57*)—ANNULMENT.
    A defense, in an action for a separation, that plaintiff had a living husband when she was married to defendant, could not be set up as a counterclaim to support a prayer for annulment under Code Civ. Proc. § 501, requiring a counterclaim to diminish or defeat plaintiff's recovery and be a cause of action arising out of the transaction alleged as the foundation of plaintiff's claim or connected with the subject of the action, or in a contract action, any other cause of action on contract.
    [Ed. Note.—For other cases, see Marriage, Dec. Dig. § 57.*]

3. MARRIAGE (§ 57*)—ANNULMENT.
    A defense by way of a counterclaim for annulment cannot be pleaded in a matrimonial action.
    [Ed. Note.—For other cases, see Marriage, Dec. Dig. § 57.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4. DIVORCE (§ 109*)—SEPARATION—BURDEN OF PROOF.**

Where, in an action for a separation, defendant pleaded as a defense a former valid marriage of plaintiff, he had the burden of proving the validity of such marriage and overcoming the presumption that the second marriage was valid.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 360; Dec. Dig. § 109.*]

**5. MARRIAGE (§ 40*)—INVALIDITY—SUFFICIENCY OF EVIDENCE.**

In order to rebut the presumption of the validity of a ceremonial marriage, the evidence of invalidity must be strong and conclusive.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 58; Dec. Dig. § 40.*]

**6. MARRIAGE (§ 58*)—ANNULMENT.**

To make a second marriage illegal on the ground of a prior marriage, it must appear that the first marriage was then subsisting, and it is not sufficient that the husband of the first marriage was living at the time of the second marriage; Code Civ. Proc. § 1743, subd. 2, permitting an action to annul a marriage on the ground that the former husband or wife of one of the parties was living and that the former marriage was in force when the marriage sought to be annulled was contracted.

[Ed. Note.—For other cases, see Marriage, Dec. Dig. § 58.*]

**7. MARRIAGE (§ 40*)—PRESUMPTIONS.**

Where defendant, with the same knowledge of all the circumstances that he now has, stated to plaintiff, to induce her to marry him, that a former ceremonial marriage by her with another was void, he cannot invoke as a defense to a separation action, the presumption of the validity of a ceremonial marriage in order to overcome the presumption of the validity of his marriage with plaintiff.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 58; Dec. Dig. § 40.*]

**8. COURTS (§ 91*)—RULE OF DECISION.**

The Special Term of the Supreme Court is bound by a decision of the Appellate Division of the same department until it is reversed or a contrary doctrine declared.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325–326; Dec. Dig. § 91.*]

**9. DIVORCE (§ 6½*)—SEPARATION—ACTIONS—JURISDICTION OF COURT—EQUITABLE JURISDICTION.**

The court has power to apply equitable principles in a matrimonial action such as one for a separation.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 2; Dec. Dig. § 6½.*]

**10. DIVORCE (§ 39*)—SEPARATION—DEFENSES.**

Where defendant, with knowledge of all of the facts, assured plaintiff, to induce her to marry him, that her former marriage with another was invalid, and they lived together as husband and wife for seven years, he cannot defend an action for separation on the ground that plaintiff's former marriage was valid; such a defense being inequitable.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. § 160; Dec. Dig. § 39.*]

Action by Anna Marie Johannessen against Andrew B. Johannessen. Judgment for plaintiff.

Abraham Kaplan, for plaintiff.
H. C. Underhill, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

GOFF, J. Two questions are presented: Was the marriage between plaintiff and defendant valid, and, if so, has defendant treated plaintiff in a cruel and inhuman manner?

[1] In her complaint plaintiff alleges marriage and cruel treatment. Defendant in his answer admits the marriage and denies such treatment, and also, as a separate defense, alleges that at the time of the marriage plaintiff had a husband living, and that her marriage to him was then in force. In his prayer defendant asks for an annulment of his marriage. In any event, such affirmative relief cannot be granted for the reason that the ground therefor is not pleaded as a counterclaim.

The answer must contain: (1) A denial; (2) new matter constituting a defense or counterclaim. Code Civ. Proc. § 500. The language of the latter clause is in the disjunctive. Each must be distinctly pleaded. One is not inclusive of the other.

[2] Nor is the separate defense a "counterclaim" as defined by section 501, Id.

[3] Nor could it be pleaded as such in a matrimonial action. Durham v. Durham, 99 App. Div. 450, 91 N. Y. Supp. 295.

This case also holds that such a defense is proper, as it raises the question of the validity of the marriage between the parties.

The facts I find to be as follows: On the 18th of September, 1897, in the state of New Jersey, plaintiff and one August Hansen Sandin were married and, subsequently, for some years, cohabited as husband and wife. One day plaintiff found a letter purporting to have been written by a woman in Sweden who claimed to be Sandin's wife. On being confronted with this, Sandin admitted that he had a wife living in Sweden. Thereupon they agreed to separate and went to a justice of the peace in New Jersey. To him Sandin admitted that he had a wife living when he was married to plaintiff. The justice advised that under the law of that state Sandin's marriage to plaintiff was void, and that it was not necessary to procure an annulment. A paper called an agreement of separation was drawn up, signed, and acknowledged before the justice, which recited that by reason of "an unhappy difference with his wife" Sandin and the plaintiff agreed to live separate and apart. About three years thereafter defendant, a widower with four children, employed plaintiff as housekeeper. In a short time he asked plaintiff to marry him. She told him of her marriage to Sandin, her leaving him, and the cause, and also of the agreement of separation and the advice of the justice. To satisfy himself the defendant went with the plaintiff to the justice, obtained from him a copy of the agreement of separation, was told by him that Sandin had admitted having a wife in Sweden, that his marriage to plaintiff was void, and that plaintiff was free to marry. Shortly thereafter, and while Sandin was living, plaintiff and defendant were married, and they lived in marital relations for over seven years. During this period the plaintiff fulfilled her duty as a wife and as a homekeeper for the defendant and his children. When she married defendant she honestly believed that her previous marriage was void and that she had a right to marry. The defendant knew all the circumstances. He satisfied

himself of their truth. He told plaintiff she was free to marry him. He accepted and acted upon the advice of the justice. Neither misrepresentation nor suppression was practiced, and no question was raised by him as to the legality of his marriage until the plaintiff, because of ill treatment, sought separation, and then, for the first time, he claimed that she was not his wife.

[4] Apart from the question of ill treatment, the issue tendered by the complaint was the marriage of the parties. This was admitted; but a new issue was raised when defendant pleaded a previous marriage. This cast upon him the burden of proving the validity of the first marriage and of overcoming the presumption that the second marriage was valid.

[5] While this presumption may be rebutted by evidence of facts invalidating the marriage, such evidence must be strong, satisfactory, and conclusive, although it involves proving a negative. Senge v. Senge, 106 Ill. App. 140. When a marriage has been shown (says Mr. Bishop), "the law raises a strong presumption of its legality—not only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain against the constant pressure of this presumption the truth of law and fact that it is illegal and void." 1 Bishop, Mar., Div. & Sep. § 956.

[6] It is not sufficient to prove the illegality of the second marriage to show that at the time the husband of the first marriage was living. McKibbin v. McKibbin, 139 Cal. 448, 73 Pac. 143. It must be proven that not only was the first marriage valid, but that it was subsisting. Before the marriage of the parties could be annulled, it would have to be proven that the former husband was living, and also that the marriage was then in force. Code Civ. Proc. § 1743, subd. 2. This would involve proving a negative; that is, that the former marriage had not been either dissolved or annulled by a court of competent jurisdiction. The defendant has failed to make such proof; nor has he proven the validity of the Sandin marriage.

· [7] It is true that he has proven a ceremonial marriage, and, while ordinarily that would be sufficient to found a presumption of validity, yet, where a party by his own acts has created the situation from which he endeavors to escape, the law will not favor him by inferring one fact from another or by indulging in one presumption for the purpose of destroying another. Hall v. Hall, 139 App. Div. 120, 123 N. Y. Supp. 1056. The defendant was fully conversant with all the facts and circumstances relating to plaintiff's marriage with and separation from Sandin; he was informed of Sandin's declaration as to the Swedish marriage; he made no further inquiries and accepted them as true; he concluded to his own satisfaction that plaintiff's marriage to Sandin was void; he advised her accordingly, and by such advice induced her to marry him, and thereby fixed his own status as the husband of plaintiff. Having done so, the law will presume that each party was competent to marry (Wenning v. Teeple, 144 Ind. 189, 41 N. E. 600), and, even though a ceremonial marriage with Sandin be shown, the law will not aid the defendant to rid himself of the responsibility of the marriage which he himself procured, by presum-

ing that the Sandin marriage was valid, but it will require him to prove its validity by showing that Sandin was competent to enter into such marriage.

In United States v. Green (C. C.) 98 Fed. 63, the plaintiff sued to recover pension money paid to defendant as the widow of a deceased soldier on the ground that, because of a prior marriage of the soldier to a woman still living at the time of his death and the invalidity of a decree of divorce obtained by him, the defendant never became his legal wife. Shiras, J., said:

"It is certainly incumbent upon the government to prove that Davis (the soldier) and Eliza Jane Calahan (the first wife) were lawfully husband and wife, and of necessity this involves the question whether when they went through the marriage ceremony they were lawfully competent to contract a marriage with each other. In many cases it might be fairly found as on inference of fact that there was competency to contract from evidence showing a proper marriage ceremony, cohabitation, and a failure to question on part of any one the validity of the marriage thus entered into. It may be true, as is claimed in argument, that the presumption of competency is ordinarily drawn as a presumption of fact from evidence showing a proper marriage ceremony; but regard must be had to the particular issue at stake and the special facts of the case. As the burden of proof is upon the government, it must be held that it has failed to adduce sufficient evidence to justify the finding that the defendant is not the lawful widow of Levi B. Davis, deceased."

It was assumed by the defendant, and the assumption acted upon by him, that the Sandin marriage was void. He now asserts it was valid. He has no more proof or knowledge now than he had when he asserted it to be void. A marriage assumed to be void at one time, and the parties having acted upon that assumption, cannot, at the caprice or convenience of one of them, be declared valid at another time unless upon the fullest and most convincing proof. This the defendant has failed to do, and consequently his separate defense has failed.

[10] Another feature is presented: Under the circumstances, can the defendant be heard in stultification of his own act? Can he be permitted to invoke the judgment of the court declaring his marriage to be invalid when he, possessed of the knowledge of all the facts, induced plaintiff to contract the marriage with him and for over seven years recognized its validity?

[9] This consideration involves the question whether the court in a matrimonial action is clothed with equity powers. The question has received attention from the courts of appellate jurisdiction in this state; but it has not been unequivocally determined, one view being that the court has not such powers, that its jurisdiction is derived from the statute, and that it can only exercise such jurisdiction as the statute confers. Another view is that, while the court has not equity powers as derived from the Court of Chancery, yet it inherently has the power to apply equitable principles to the administration of the statute. This latter view was held by Clarke, J., in writing for the majority of the court in Berry v. Berry, 130 App. Div. 53, 56, 114 N. Y. Supp. 497, 499. He said:

"The question here presented is whether * * * the husband, who contracted a void marriage in bad faith, can maintain an action to relieve himself of the consequences of the said marriage by a judgment of the court annulling the same."

It was held that he could not, and that the maxim that he who seeks relief must come into court with clean hands applied. This case was decided in January, 1909. In April, 1910, the Court of Appeals, in an action to annul a marriage on the ground of a former marriage of the defendant, where the parties had lived together about three years (Stokes v. Stokes, 198 N. Y. 301, 312, 91 N. E. 793, 797), said:

"While it may well be that there are extreme cases where the position of the party seeking relief of the kind sought here is so inequitable that a court of equity will refuse to interfere, no such defense was sufficiently proved in the case before us."

It should be noted that in an opinion of the same court just handed down (Ackerman v. Ackerman, 200 N. Y. 72, 93 N. E. 192), Collin, J., says:

"The courts of this state have no common-law jurisdiction over the subject of divorce, and their authority is confined altogether to the exercise of such express and incidental powers as are conferred by the statute."

The points decided in the case were the invalidity of a foreign divorce and the running of the statute of limitations after discovery of the adultery. There is no rule laid down contrary to the doctrine of the Berry Case, and, indeed, that doctrine might find inclusion under the phrase "and incidental powers."

[8] While the Berry Case, supra, stands unreversed or a contrary doctrine authoritatively declared, I must accept it as the law of this department that in a matrimonial action the court has power to apply equitable principles. This doctrine by strong implication was approved by the Court of Appeals in the Stokes Case, supra, when it was declared that there may be extreme cases so inequitable that a court of equity will refuse to interfere. Of course the court does not define boundaries beyond which an extreme case may arise. None can be defined. Each case must be adjudged according to its particular facts and circumstances, and the responsibility for such adjudication primarily rests upon the judge, who has seen and heard the witnesses. I declare this to be an extreme case. To permit this defendant to disavow his own act to the injury of another; to relieve him from a marriage which he entered into with full knowledge of all the surrounding circumstances; to allow him after seven years of cohabitation to treat his marriage as void and utilize a prior marriage of plaintiff as a shield to protect him from the consequences of his own violence; to send the plaintiff at her time of life adrift on the world stigmatized as a bigamist—would, indeed, be inequitable.

For this additional reason the separate defense is unavailable.

On the question of cruel and inhuman treatment, the allegations of the complaint have been amply sustained by the evidence, and the plaintiff is entitled to a judgment of separation, with provision for her support. The amount fixed pendente lite by the justice at Special Term appears reasonable, and I will adopt it, unless it is made to appear otherwise. Upon that and counsel fee, counsel may be heard when findings are submitted.

Ordered accordingly.