(91 Misc. App. 116)

LAZAROWICZ v. LAZAROWICZ.

(Supreme Court, Special Term, Kings County.   June 22, 1915.)

1. MARRIAGE ☞40—ANNULMENT OF—BURDEN OF PROOF.

 In an action to annul a marriage on the ground that defendant wife had a former husband living, plaintiff has the burden of proving, not only a former ceremonial marriage, but that it was valid and subsisting at the time of the second marriage, which proof should be made by showing a compliance with the laws of the place of the marriage; this being particularly true where defendant testified plaintiff had induced her to get a rabbinical divorce, which she supposed was valid, and a judgment for plaintiff would show defendant guilty of bigamy.

 [Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 58–69, 79; Dec. Dig. ☞40.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MARRIAGE ⬤⟶50—ANNULMENT—EVIDENCE.

In an action to annul a marriage on the ground that the defendant wife had a husband living at the time of her marriage, evidence *held* insufficient to show the former marriage.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 79–89; Dec. Dig. ⬤⟶50.]

Action by Lewis Lazarowicz against Sarah Lazarowicz. On application for interlocutory judgment. Application denied.

Alfred K. Schwabach, of New York City (A. Gross, of New York City, of counsel), for plaintiff.

BENEDICT, J.   Plaintiff seeks a judgment annulling his marriage with defendant on the ground that at the time of such marriage defendant had a former husband living.   On the application for judgment by default a witness named Max Nadler, who stated that his name in Hungarian was Michael Nadler, testified that he had been married to the defendant in Hungary prior to her marriage to plaintiff, and that neither the witness nor the defendant had ever obtained a divorce.   The defendant was also sworn and testified that she had been married to one Michele Nadler in Hungary.   The two—defendant and the witness Nadler—were not in court at the same time, so that there was no personal identification of either by the other.

An attempt was absurdly made to prove that the name "Max" is an English equivalent or translation of the Hungarian name "Michael." The two names have, obviously, no relation to each other.   "Michael" is a Hebrew name, meaning "Who is like God?" and is found in slightly differing forms in most, if not all, modern European languages. The English form is "Michael," as is also the German form.   "Michele" is the Italian form.   "Max" is probably a contraction of Maximilian, or some name with a similar first syllable, ultimately derived from the Latin word "maximus," meaning greatest.   The witness may, on coming to this country, have assumed the name Max, but it is in no sense a translation of his former name.

There is another more serious discrepancy, however, between the testimony of the witness Nadler and the defendant, namely, with respect to the time and circumstances of the alleged former marriage.   Nadler places the time in 1908, and swears that plaintiff was present.   The defendant places the time in 1904 or 1905, and denies that plaintiff was present.   No other proof of the alleged former marriage was given than the statements of Nadler and the defendant.

[1, 2]  In a case of this kind the burden is on the plaintiff to prove, not only a former ceremonial marriage, but that such marriage was valid and still subsisting at the time of the second marriage.   Johannessen v. Johannessen, 70 Misc. Rep. 361, 364, 128 N. Y. Supp. 892; Lau v. Lau (Sup.) 140 N. Y. Supp. 310, affirmed 156 App. Div. 912, 141 N. Y. Supp. 1128; Lau v. Lau, 154 N. Y. Supp. 107.   While it is true that ordinarily the fact of, marriage, if uncontroverted, may be proved by the testimony of one of the parties thereto, in a case of this kind, where the effect of a judgment in plaintiff's favor will neces-

sarily brand the defendant with the crime of bigamy, the court is justified in requiring strict proof that the alleged prior marriage was in fact a valid marriage according to the laws of Hungary. This should be done by proving compliance with all the formalities required by the law of that country to make a valid marriage. Presumably, if the marriage was valid, there is an official record thereof, of which an authenticated copy could be produced. The law of Hungary relating to marriages should also be proved.

So, also, it must be proved that the former marriage still continued in existence at the time of the subsequent marriage. Pagin v. Pagin, reported as Fagin v. Fagin, 88 Misc. Rep. 304, 151 N. Y. Supp. 809; Lau v. Lau, supra. In this case plaintiff gave evidence tending to show that defendant and Nadler had not been divorced, but he did not show that their marriage had not been annulled.

The conduct of the plaintiff toward defendant, if her testimony be true, has been most inequitable. He persuaded her, so she says, to get a rabbinical divorce, which she supposed to be valid, and to marry him, telling her it would be all right. While such considerations might not be ground for refusing a decree of annulment if the defendant were shown to have had a former husband living at the time of her marriage to plaintiff (see Stokes v. Stokes, 198 N. Y. 301, 91 N. E. 793; Brown v. Brown, 153 App. Div. 645, 138 N. Y. Supp. 602), it tends to confirm me in the opinion that strict proof that there was a valid prior marriage and that it still subsisted should be required.

I will therefore afford plaintiff an opportunity to present further proof at a time to be fixed.