In the Matter of the Application of NANA HENRIETTA BUTTLES, as Successor Testamentary Trustee, to Execute the Trust under the Last Will and Testament of ANTHONY DUGRO, Deceased, for Leave to Sell Securities and for Advice and Direction as to the Distribution of Personal Property Remaining Unsold and the Management of Real Property and the Collection of Rents and Payment of Operating Expenses Thereof.

In the Matter of the Application of FRANCIS A. DUGRO and DOROTHEA W. DUGRO, Distributees in the Estate of ANTHONY DUGRO, Deceased, to Compel NANA HENRIETTA BUTTLES, Successor Trustee, to Make Distribution to FRANCIS A. DUGRO, DOROTHEA W. DUGRO and KATHERINE D. WISWALL of the Proceeds of Bonds Liquidated by the Successor Trustee.

(Consolidated Proceedings.)

DOROTHEA W. DUGRO, II, Claimant, Appellant; NANA HENRIETTA BUTTLES, as Successor Testamentary Trustee, of ANTHONY DUGRO, Deceased, and as General Guardian of PAUL VINCENT BUTTLES, an Infant; FRANCIS A. DUGRO and DOROTHEA W. DUGRO; MARVIN DUGRO BUTTLES, JR., Individually and as Administrator, etc., of FRANCIS A. DUGRO, Deceased, KATHERINE D. WISWALL, CHARLES DUGRO, NEW YORK TRUST COMPANY, PHILIP H. DUGRO and Trustees and Guardians of ANTONIA DUGRO SCHOLLER, Respondents.

First Department, February 7, 1941.

*John L. Delius* of counsel [*Thomas R. Purcell*, attorney], for the appellant.

*Louis Stone* of counsel; *Louis Stone*, attorney, for the respondents Francis A. Dugro and Dorothea W. Dugro; *Larkin, Rathbone & Perry*, attorneys for the respondent Marvin Dugro Buttles, Jr., individually and as administrator, etc., of Francis A. Dugro, deceased; *Humes, Buck, Smith & Stowell*, attorneys for the respondent Philip H. Dugro; *Howard O. Patterson*, attorney for the respondent Katherine D. Wiswall; *Benjamin Shiverts*, attorney for the respondent Nana Henrietta Buttles and general guardian of Paul Vincent Buttles.

MARTIN, P. J. The will of Anthony Dugro, who died in 1884, established certain trusts which will ultimately vest in such of his children or their lawful issue as are survivors at the termination of the trusts. The appellant is entitled to participate, if she is the lawful issue of Anthony Dugro. The surrogate has determined that the marriage of Philip Henry Dugro, grandson of the testator, to the mother of the appellant was bigamous and that, therefore, the appellant is not a legitimate descendant of the testator. The ultimate sole issue before this court is whether Dorothea W. Dugro, II, is a lawful descendant of Anthony Dugro.

It is admitted that the appellant is the child of Philip Henry Dugro and Sybrania Stanley. The record establishes that Philip Henry Dugro and Sybrania Stanley were ceremonially married in Providence, R. I., on June 13, 1907, by a Baptist clergyman. The appellant was born in the borough of Brooklyn, N. Y., on May 1, 1908. The birth certificate lists P. Henry Dugro as the father, and there is testimony which establishes that he acknowledged the paternity, and during his life he and the appellant occupied the relationship of parent and child.

The respondents produced the record of the marriage of Sybrania Stanley and James McGroarty in the borough of Brooklyn on July 19, 1905. There was some proof that these parties lived together, and one of the respondents' witnesses testified that a brother of Sybrania had stated that they (Jim McGroarty and Sybrania Stanley) had run away and that they separated. The respondents maintain that less than twenty-three months after the marriage to McGroarty and while McGroarty was still living (he died in 1911) Sybrania Stanley entered into a bigamous marriage with Dugro. The respondents maintain that the proof of a valid previous marriage is adequate factual demonstration of the invalidity of the succeeding one.

The burden of establishing that she is entitled to share in the estate of Anthony Dugro is on the appellant. She met that burden by proving the ceremonial marriage of her parents and establishing that she is the issue of that marriage.

The respondents contend that they have met the burden of going forward by proof of the previous marriage, and it is argued that the presumption of the validity of the second marriage rests on proof of the ceremony performed in Providence, R. I., but this presumption was rebutted by the proof of a prior marriage, since both were so close in time, and the presumption then left was that the first marriage continued to the time the second marriage was attempted. The respondents further argue it was for the appellant to rebut this succeeding presumption by evidence that the McGroarty marriage was invalid in inception or was dissolved.

The respondents do not seem to understand the extent of their burden. It was not incumbent upon the appellant to prove that the first marriage was terminated by death, annulment or divorce. As was said by Surrogate WINGATE in *Matter of Callahan* (142 Misc. 28, 31; affd., 236 App. Div. 814; affd., 262 N. Y. 524): " * * * It must, therefore, be determined that as a result of the proof of the ceremonial marriage by the petitioner, the burden of proof, or to use the phrase of Professor Wigmore, ' the risk of non-persuasion ' on the general subject, passed from the petitioner to the respondents, to demonstrate the invalidity of this marriage. Such invalidity could be shown only by a demonstration that one or the other party thereto was, at the time of its celebration, debarred from entering into the relation. * * * "

*Matter of Callahan* involved the invalidity of a second marriage, and, after a discussion of reasons for presumptions, Surrogate WINGATE, at page 36, said:

" * * * The petitioner has clearly demonstrated the solemnization of a ceremonial marriage between herself and the decedent.

This gives rise to a true presumption of its validity. Not only is there present the logical inference thereof by reason of the common experience of mankind, but there is a distinct and definite public policy to this effect which has been emphasized in innumerable adjudications.

" In *Matter of Biersack* (96 Misc. 161; affd., 179 App. Div. 916) the following appears (at p. 166): ' The expression of Lord COTTEN-HAM in *Piers* v. *Piers*, 2 H. L. Cas. 233, has frequently been adopted and applied:

" ' His words were: " A presumption of this sort, in favor of marriage, can only be negatived by disproving every reasonable possibility. * * * You should negative every reasonable possibility."

" ' A presumption like unto that which assumes legitimacy is also indulged in behalf of a second marriage, even though children, the fruit thereof, are not involved. There it finds its impulse in the law's jealousy for the order of society.'

" Among the many cases containing similar statements it will suffice to cite the following: *Clayton* v. *Wardell* (4 N. Y. 230, 237, 238); *Matter of Meehan* (150 App. Div. 681, 682, 684); *Smith* v. *Smith* (194 id. 543, 548, 554); *Matter of Tyrrell* (115 Misc. 714, 715; affd., 198 App. Div. 1001); *Matter of Goode* (188 N. Y. Supp. 188, 189, not officially reported; affd., 204 App. Div. 877); *Graham* v. *Graham* (211 id. 580, 583); *Matter of Briggs* (per O'BRIEN, S., 138 Misc. 136, 148; affd., 232 App. Div. 666); *Nesbit* v. *Nesbit* (3 Dem. 329, 331, 332); *Johannessen* v. *Johannessen* (70 Misc. 361, 364, 365); *Matter of Grande* (80 id. 450, 457); *Matter of Salvin* (106 id. 111, 112, 113); *Matter of Rossignot* (112 N. Y. Supp. 353, not officially reported)."

In *Matter of Tompkins* (207 App. Div. 166) it was said: " The presumption of the validity of a marriage is sufficiently strong to cast the burden of showing its invalidity upon those who attack it. (*Hynes* v. *McDermott*, 91 N. Y. 451, 458.) "

In that case the court quoted from *Hunter* v. *Hunter* (111 Cal. 261, 267; 43 P. 756) in part, as follows: " There is also a presumption, and a very strong one, in favor of the legality of a marriage regularly solemnized. Rather than hold a second marriage invalid and that the parties have committed a crime or been guilty of immorality, the courts have often indulged in the presumption of death in less than seven years, or, where the absent party was shown to be alive, have allowed a presumption that the absent party has procured a divorce. A more correct statement perhaps would be that the burden is cast upon the party asserting guilt or immorality to prove the negative * * * that the first marriage had not ended

before the second marriage." (See, also, *Matter of Dedmore*, [1930] 257 Ill. App. 519, and *Routledge* v. *Githens*, [1926] 118 Ore. 70; 245 P. 1072.)

The rule is concisely stated in Schouler on Marriage, Divorce, Separation and Domestic Relations (Vol. 2 [6th ed.], § 1252, p. 1488): "The burden is upon a person who asserts the illegality of a marriage to prove such illegality and where a second marriage is shown as a fact a strong presumption exists in favor of its legality which is not overcome by mere proof of a prior marriage and that the wife had not obtained a divorce before her second marriage. The parties attacking such second marriage have the burden of proof to show that neither party to the first marriage had obtained a divorce."

It is clear from the authorities that the respondents had to affirmatively establish that the first marriage was valid and existing at the time of the Rhode Island ceremony and could not rest on an inference of continuity. Nor is the respondents' burden any less because of the fact that they are endeavoring, through the attack on the second marriage, to have it established that the appellant is illegitimate. On the contrary, as was said in *Matter of Smith* (136 Misc. 863, 868): "While the burden cast by the law upon any person attacking the validity of a *de facto* marriage is great, the presumption in favor of the marriage is less strong than the presumption that a recognized child is legitimate. (*Caujolle* v. *Ferrié*, 23 N. Y. 90, 95, 107; *Ellis* v. *Kelsey*, 118 Misc. 763, 766; affd., 208 App. Div. 774; 214 id. 784; affd., as to this matter, 241 N. Y. 374, 379; *Matter of Leslie*, 175 App. Div. 108, 111; *Matter of Biersack*, 96 Misc. 161, 166; affd., 179 App. Div. 916; *Mace* v. *Mace*, 24 id. 291, 293.) "

To succeed, the respondents had to eliminate the possibility that the second marriage was valid and the issue legitimate. (*Caujolle* v. *Ferrié*, 23 N. Y. 90; *Matter of Biersack*, 96 Misc. 161; affd., 179 App. Div. 916; *Matter of Meehan*, 150 id. 681.)

The factual situation in *Matter of Meehan* (*supra*) is strikingly similar to the situation now before us. Frank C. Meehan and Caroline F. McDonald were ceremonially married on January 30, 1881, and the parties lived together and two children were born of the marriage. On the death of Meehan, in a contest over the right to administer his estate, his brother and sister asserted that the marriage to Caroline F. McDonald was invalid because Meehan had a wife living at the time it was contracted. The record established a ceremonial marriage between Meehan and one Sarah Ruppius on September 16, 1877, followed by their living together for a short time, and there was evidence that Sarah Ruppius was

alive after Meehan's second marriage and had been seen in his company after the death of Caroline F. McDonald. In upholding the validity of the second marriage and the legitimacy of the issue thereof, this court said: " While there appears to be no case in this State directly in point, there are numerous decisions in other jurisdictions to the effect that, if necessary to support the legality of the second marriage it will be presumed, in the absence of evidence to the contrary, that the first marriage had been legally dissolved." (Citing cases.)

Further: " We think that where the fact of a marriage, especially of a ceremonial marriage, followed by the long cohabitation of the parties and the birth of children, is established, it is incumbent upon whoever assails the validity of the marriage and the legitimacy of the children to prove his case by evidence instead of presumptions, even if that involve proof of a negative, and especially when, as here, the attempt is made after the lapse of thirty years and the death of the parties, not by any one claiming rights under an alleged prior marriage, but by relatives who would deprive children of their inheritance by branding them as illegitimates. The appellants have failed to bear the burden of proof imposed upon them. The first marriage may have been legally dissolved or, what is quite as probable, it may have been invalid because the said Sarah Ruppius had a husband living at the time."

We find nothing that was said in *Matter of Findlay* (253 N. Y. 1) opposed to the holdings cited above. In that case the facts negativing probability of access were sufficiently strong to destroy a presumption of legitimacy as to children born after separation, and the court (at p. 12) said: " We have no thought to weaken the presumption of legitimacy by allowing its overthrow at the call of rumor or suspicion, or through inferences nicely poised."

The record shows that the declaration of intention of marriage signed prior to the Rhode Island ceremony, contains statements as to residence and place of birth claimed not to be in accord with the facts; the number of the marriage is given as " 1," and after the query, " Divorced," there is a blank. When McGroarty died in 1911 his death certificate stated he was single. When appellant's mother died in 1909, her death certificate gave her name as " Sybarine McGroarty," and the gravestone on her grave bears the name " Stanley," her maiden name. When appellant's father died, his death certificate described him as single. It is impossible to reconcile all these contradictory statements, and in the absence of proof of the circumstances under which they were made, it is difficult to evaluate them. An example of the unreliability of such statements may be found in the certificate of appellant's

birth, which gives her birth date as May 1, 1908, but the date of the report as May 2, 1905. We treat all this evidence as subordinate to the principal established facts, that the appellant's parents were ceremonially married and that she is the issue of the union following that ceremony.

The record here establishes that Philip Henry Dugro, in his lifetime, acknowledged the appellant as his daughter, and the proof offered by the respondents is insufficient to establish that the ceremonial marriage in Rhode Island of the parents of the appellant was invalid.

This court holds that the appellant is a legitimate descendant of Anthony Dugro and entitled to share in his estate as a distributee thereof.

The decree appealed from should be reversed and the matter remitted to the Surrogate's Court for further action in accordance with this opinion.

TOWNLEY, UNTERMYER, DORE and COHN, JJ., concur.

Decree unanimously reversed and the matter remitted to the Surrogate's Court for further action in accordance with opinion.