Samuel S. Tripp,
Special Referee. In the first of the above-entitled actions, Rose Ventura, hereinafter referred to as Rose, obtained a judgment of separation dated June 11, 1965' from the defendant, Joseph Ventura, hereinafter referred to as Joseph, upon the withdrawal of his answer during trial on March 23, 1965. By order to show cause dated November 29, 1966, Joseph moved to vacate that judgment on the ground ‘ ‘ that newly discovered evidence indicates there never was a legal and valid marriage in the first instance.” (CPLR 5015, subd. [a], par. 2.) This motion was referred to the Trial Justice, who made an order dated January 10, 1967, referring the matter to the undersigned “ to hear and report on the issues and any other issue that may properly be raised ’ ’.
When the foregoing reference was reached for trial, the attorneys for the parties requested that the second of the above-entitled actions, in which Joseph seeks to annul his marriage to Rose, be tried at the same time. The Justice presiding in Special Term, Part III, of this court, thereupon made an order dated March 14, 1967 referring that action to the undersigned to hear and determine. The written consent of the attorneys for the respective parties was appended to that order. (CPLR 4317, subd. [a].) Inasmuch as the disposition of both matters turned upon the resolution of identical issues of fact and law, all parties consented on the record that the reference to hear and report in the separation action (CPLR 4212) should likewise be “to hear and determine ”. (Rayex Corp. v. Sanchez, 6 AD 2d 903.)
Rose’s first husband, Colon T. Ensminger, hereinafter referred to as Colon, was subpoenaed by Joseph. He appeared by an attorney assigned by the Legal Aid Society, and on an oral motion voluntarily joined as a defendant in the annulment action. He denied the material allegations of Joseph’s complaint, verified September 10, 1966, and as an affirmative *883 defense alleged his remarriage on October 22, 1966, in reliance upon the subsisting Enoch Arden decree dated February 19, 1959 obtained by Bose pursuant to former section 7-a, now sections 220 and 221, of the Domestic Relations Law, dissolving her marriage to him, as of May 21, 1959, when it became final as of course.
That marriage was solemnized, in New York City, on January 16, 1943, three days prior to Colon’s departure for military service. No issue was born of this union. He saw Rose twice before going overseas in 1944, the last time during a one month furlough preceding his departure. He returned to her after his discharge from the army on October 3 or 5, 1945. When he found out, within a week or so, of Rose’s friendship with Joseph, Colon “ took off ” as he put it, without saying a word and he never communicated with or saw her again until the trial on March 14, 1967, although he continued to reside in New York City.
J oseph met Rose in March or April, 1945 and learned of her marriage to Colon several months thereafter. Following his disappearance, J oseph and Rose lived together as husband and wife and so held themselves out to the world as any normal married couple would, including the acquisition in both names of a home in Brooklyn followed by the purchase of another in Rosedale, Queens County. A daughter, now married, was born on September 15,1946. But it was not until November 16,1958, that they married. A Justice of the Peace performed the ceremony in the City of Yonkers, New York.
From the time he commenced living with Rose, following Colon’s disappearance, Joseph never bothered to ascertain whether Colon was alive. From time to time, prior to his ceremonial marriage in November, 1958, and more particularly subsequent to the birth of his child he suggested marriage. Rose postponed it, however, explaining that they could not marry until after Colon had been absent for seven years. Finally, after a reconciliation following a three-month separation between June and October, 1958 as the result of a quarrel, she suggested marriage to which he agreed. In her application for a marriage license she disclosed her prior marriage to Colon, stating that he died on February 3, 1951. This statement was based upon her unsuccessful search for him since 1950, particularly through the Missing Persons Bureau of the Police Department of the City of New York, whose representative finally told her in February, 1951; “ If you didn’t hear * * * [from Colon] till now, he probably is dead ”.
*884 Colon, too, attempted to find Rose. After consulting a private attorney in 1957, whom he was unable to pay the required expenses of a search, he went to the Legal Aid Society, which referred him to the Family Location Service in Union Square West, New York City. That service, however, was unsuccessful in locating her. He tried again in 1960 or 1961 but to no avail. He returned to the Legal Aid Society and although he believed that Rose had died, no proceedings were instituted to dissolve their marriage.
Sometime in the Summer of 1966, Joseph located and his attorney communicated with Colon who thereupon again consulted the Legal Aid Society. Its attorney then commenced an action for divorce and Rose was served with process on September 28, 1966 through a process server apparently furnished by Joseph’s attorney. Nothing further was done in the prosecution of that action. Colon’s attorney advised him that he could legally remarry in reliance upon the final decree of dissolution obtained by Rose, a certified copy of which was made available to him by Joseph’s attorney.
The attorney, who had represented both Rose and Joseph when they purchased at least one of their two houses, was a frequent social visitor at their home and present when their marital status was discussed. He commenced a then section 7-a dissolution proceeding by obtaining an order of publication in this court, dated November 6, 1958, returnable on February 3, 1959, based upon Rose’s petition verified November 3, 1958. Her testimony was taken on February 3, 1959. Proof of publication was made in an affidavit sworn on November 29, 1958 by the Principal Clerk of the Queens-Ledger, the newspaper designated in the afore-mentioned order. According to this affidavit, the required notice was published in the Queens Ledger “ once in each week for three successive weeks commencing in its issue of November 13,1958 and continuing on November 20, 27,1958 ”. It is thus clear that the validity of Rose’s November 16, 1958 ceremonial marriage to Joseph cannot rest upon the interlocutory dissolution decree dated February 19, 1959, filed and entered the following day. By its terms, it was to ‘ ‘ become * * * final * * * as of course, three months after the entry and filing thereof * * # [when] the marriage heretofore existing between Rose Ensminger, the petitioner, and Colon Ensminger, the respondent, shall be dissolved.”
Under section 6 of the Domestic Relations Law a marriage entered into with another whose spouse is living is absolutely void (Cave v. Cave, 285 App. Div. 897), as is one entered into prior to the finality of a decree annulling a wife’s earlier mar *885 riage. (Landsman v. Landsman, 302 N. Y. 45.) Neither laches (Campbell v. Campbell, 239 App. Div. 682, affd. 264 N. Y. 616) nor the birth of a child of the second marriage can clothe it with sanctity. (Matter of Richmond, 178 Misc. 1018, 1022.) As held in Landsman (supra, p. 48), a void marriage creates “neither right nor duty” and gives “neither scope for recrimination nor room for any counteractive estoppel”. The doctrine of clean hands cannot bar relief to the second husband and the wife’s good faith in marrying him cannot aid her in obtaining a judgment of separation.
Failure to obtain an Enoch Arden decree does not render a subsequent marriage void on that ground (Randolph v. Randolph, 28 Misc 2d 66, 68) since protection is afforded by the common-law presumptions (1) of death after the unexplained absence of a person for seven successive years (Butler v. Mutual Life Ins. Co. of N. Y., 225 N. Y. 197, 203; Di Claudio v. Di Claudio, 205 Misc. 532, affd. 285 App. Div. 1139; Cavanaugh v. Valentine, 181 Misc. 48, 55; Richardson, Evidence [8th ed.], § 65; Fisch, New York Evidence, § 1123) and (2) of the validity of the subsequent marriage. The latter presumption is not overcome by mere proof of the prior marriage inasmuch as the inference of the continuity of the first yields to the stronger presumption of the validity of the subsequent marriage. (Matter of Dugro, 261 App. Div. 236, 240, affd. 287 N. Y. 595; Romps v. Romps, 209 App. Div. 832; Smith v. Smith, 194 App. Div. 543, 551, 553; Matter of Meehan, 150 App. Div. 681, 683.)
As noted, however, by the late Mr. Justice Shientag in Anonymous v. Anonymous (186 Misc. 772, 776) “ the return of the absent spouse or proof that he is still alive completely nullifies the common-law presumptions ”. (Emphasis supplied.) When Rose entered into a ceremonial marriage with Joseph without a final decree dissolving her marriage to Colon, she 1 ‘ took the risk that he might thereafter reappear or might be discovered to be alive ” (Anonymous, supra, p. 776). Had she married him subsequent to May 21, 1959, when her decree became final, the marriage which Joseph seeks to annul would be “ valid and ” remain “ so notwithstanding the later return of the absent spouse or the discovery thereafter that he is still alive”. (Anonymous, supra, p. 775; Matter of Kotlik, 153 Misc. 355, 356.) She remarried, however, not only before that decree became final, but even before publication of the notice directed by the order dated November 6, 1958 was completed. The decree, therefore, cannot protect her ceremonial marriage to Joseph even though it cannot be vacated merely because of Colon’s reappearance. (Matter of Di Giovanni, 6 A D 2d 1038.) *886 In any event, Joseph has no standing to vacate it. (Arcuri v. Arcuri, 265 N. Y. 358; Matter of Aumick, 279 App. Div. 846; Rogers v. Rogers, 19 Misc 2d 996, 998; Matter of Valle, 131 N. Y. S. 2d 159.)
Since it is the finality of the dissolution decree which transforms the probability of the missing spouse’s death into a legal certainty, any marriage entered into thereafter will be sustained. (Matter of Kotlik, supra, p. 356.) Upon the foregoing basis, Colon’s remarriage on October 22, 1966, in reliance upon the subsisting final decree dissolving his marriage to Rose as of May 21,1959, is valid. Rose’s ceremonial marriage to Joseph, contracted prior to that date, however, is not and she is not his wife unless as alleged in her counterclaim she subsequently entered into a common-law marriage with him in Georgia valid under its laws and, therefore, entitled to recognition here. (Matter of Miller, 299 N. Y. 708; Apelbaum v. Apelbaum, 7 A D 2d 911; Matter of Schneider, 206 Misc. 18, 23.)
Mr. Justice Munder held in Mortensen v. Mortensen (225 N. Y. S. 2d 323, 325-326) that “ once the impediment of the defendant’s prior existing marriage was removed * * * the parties had the legal capacity to contract a common-law marriage during the period of their continued cohabitation in Georgia. It has been held in that state that a mutual agreement to be husband and wife by parties able to contract followed by cohabitation constitutes a valid marriage. Stewart v. Price, 89 Ga. App. 662, 81 S. E. 2d 28; Askew v. Dupree, 30 Ga. 173. Though here we have no proof of any express agreement between the parties, such proof is not necessary. ‘ Proof of an express agreement * * * is not necessary, it being sufficient
if from the circumstantial evidence such a conclusion may be inferred ’ (Chance v. Chance, 60 Ga. App. 889, 5 S. E. 2d 399).’ In re Gibson’s Will, 29 Misc. 2d 21, 212 N. Y. S. 2d 335. From proof of matrimonial cohabitation and that the parties held themselves out to the world as husband and wife a common-law marriage may be inferred. Chance v. Chance, 60 Ga. App. 889, 5 S. E. 2d 399. The law presumes marriage from cohabitation and repute where no actual competing marriage is proved. White v. White, 41 Ga. App. 394, 153 S. E. 203.”
In New York, where common-law marriages within its borders were abolished as of April 29, 1933 (Domestic Relations Law, § 11, as amd. by L. 1933, ch. 606), the rules governing their establishment were not materially different from those obtaining in Georgia. Thus in Rose v. Clark (8 Paige ch, 574, 579-580), cited with approval in Askew v. Dupree (30 Ga. 173, 178), Chancellor Walworth held that “ any mutual agreement *887 between the parties to be husband and wife in preesenti, especially where it is followed by cohabitation, constitutes a valid and binding marriage, if there is no legal disability on the part of either to contract matrimony. ’•’ The rule enunciated in Bose v. Clark was cited with approval in Matter of Wells (123 App. Div. 79, affd. 194 N. Y. 548) and iterated in Matter of Haffner (254 N. Y. 238, 242). There, the Court of Appeals stated that a ‘ ‘ common-law marriage is not required to be proved in any particular way. It is sufficient if the evidence establishes that legally competent parties in preesenti intended to become husband and wife and thereafter lived and cohabited as husband and wife. The ceremonial marriage evidenced the intent * * * to enter into a legal and honorable state of matrimony ’ ’.
Shea v. Shea (294 N. Y. 909), De Milio v. New York State Thruway Auth. (15 A D 2d 27, 28), Gordon v. Gordon (27 Misc 2d 948, affd. 13 A D 2d 983, mot. for lv. to app. den. 10 N Y 2d 709) and Mortensen v. Mortensen (supra) held that a common-law marriage validly entered into in another State, is valid in New York even though it could not have been contracted here. In Gordon (supra), as here* the husband admitted his marriage in his wife’s separation action and stipulated support for her and their children. He later moved to vacate the judgment on the ground that the parties had not remarried following a divorce. After marrying and divorcing another woman, the husband resumed living with his first wife in New York. During 18 years of such cohabitation, he fathered two children. For over a year of this period, he was in military service and resided with his family in the married officers ’ quarters of an army camp in Texas, where a common-law marriage could be contracted. Following the resumption of their residence in New York the separation action was commenced. The husband’s motion to vacate the resulting judgment was denied upon the ground that during the couple’s stay in Texas they contracted a valid common-law marriage which subsisted upon their return to New York.
So too, the parties here entered into a valid common-law marriage in Georgia which continued upon their return to New York. After Rose’s impediment to remarriage was eliminated by her Enoch Arden decree becoming final on May 21, 1959, Joseph took her and their daughter on a two-week automobile *888 trip commencing with the July 4, 1959 week end. During three days thereof they were guests of a friend in Atlanta, Georgia, where they acknowledged and held themselves out as husband and wife. Upon their arrival, when their host had other guests, they spent the night at a motel in Atlanta where Joseph registered both as husband and wife and paid the bill. The two subsequent nights, they slept together in their friend’s home. Unlike the situation in Matter of Heitman (154 Misc. 838, affd. 247 App. Div. 855, affd. 272 N. Y. 533), their stay in Georgia was not meretricious. Their conduct1 ‘ taken in connection with their previous association, was equivalent, in law, to a declaration by each that they did and during their joint lives were to occupy the relation of husband and wife.” (Travers v. Reinhardt, 205 U. S. 423, 440; see, also, Leeds v. Joyce, 202 App. Div. 696, affd. 235 N. Y. 620; Bamberger v. Bamberger, 128 Misc. 1; Townsend v. Van Buskirk, 33 Misc. 287, 291.)
While their residence in Georgia was short, it was sufficient. Georgia law prescribes no particular period of cohabitation within its borders as a predicate for a common-law marriage. (Georgia Code Ann., § 53-101; Heflinger v. Heflinger, 161 Ga. 867; Lefkoff v. Sicro, 189 Ga. 554; Drewry v. The State, 208 Ga. 239, 243-244.) Its courts hold that “Where a ceremonial marriage is void on account of a disability of one of the parties to contract marriage, if, after such disability is removed, the parties continue to cohabit, holding themselves out to the world as husband and wife, they will be held to be properly married.” (Johnson v. Johnson, 96 Ga. App. 84; see, also, Hamilton v. Bell, 161 Ga. 739.)
In Matter of Wells (123 App. Div. 79, 85-86, supra), the court stated that when an impediment rendering one of the parties incapable of entering into a marriage relation “ is removed, if the parties continue matrimonial cohabitation, continue to introduce and recognize each other as husband and wife, and are so recognized by their relatives, friends and by society, it ought to be held that from such moment they are actually husband and wife, and that under such circumstances it is of no importance that a formal agreement to live together as husband and wife was not entered into or that either did not know that the impediment to such an agreement had been removed, when in fact it had been so removed and both parties were competent to enter into the matrimonial state.” This rule was approved and followed by the late distinguished Presiding Justice of the Second Department, Mr. Justice Lazansky, while still in nisi prius. (Applegate v. Applegate, 118 Misc. 359, 361.) He tersely stated: “ While their marriage was invalid and they *889 did not know of it, their actions from the time the impediments were removed were an expression of their intention to be that tohich they theretofore were not but which they believed they were” (emphasis supplied). Georgia’s Supreme Court held similarly in Addison v. Addison (186 Ga. 155), where it observed that if the 1 ‘ illegal original cohabitation was in pursuance of an abortive ceremonial marriage, the continued cohabitation as man and wife after the disabilities have been removed will, in the absence of anything appearing to the contrary, cause the original declaration of intent to be treated as continuing.” (See, also, Johnson v. Johnson, 96 Ga. App. 84; Robertson v. Robertson, 90 Ga. App. 576, 582.)
Accordingly, Joseph’s motion to vacate the judgment of separation dated June 11, 1965 is in all respects denied; his complaint in the action to annul his marriage to Eose is dismissed on the merits, without costs but with taxable disbursements (CPLR 8301, subd. [c]) and, as prayed for in her counterclaim, they are declared lawfully wedded since July, 1959 and their daughter their legitimate issue, as prayed for in the pleadings of both her parents. Pursuant to paragraph (1) of subdivision (a) of section 237 of the Domestic Delations Law, Eose is allowed a counsel fee of $500, payable within 20 days after the service of a copy of the judgment with notice of entry.

 Joseph withdrew his answer at the trial of the separation action and stipulated permanent alimony for Rose’s support at the rate of $50 a week. This was incorporated in the findings and judgment of separation, dated June 11, 1965.