**METROPOLITAN LIFE INSURANCE COMPANY et al., Plaintiffs,**

**v.**

**Lynn T. HOLDING et al., Defendants.**

**Civ. A. No. 4612.**

United States District Court
E. D. Virginia,
Alexandria Division.

Nov. 25, 1968.

Fred C. Alexander, Jr., Alexandria, Va., for plaintiffs.

Peter A. Greenberg, Washington, D. C., for defendant Lynn T. Holding.

Robert W. Dech, Alexandria, Va., for infant defendants.

Dennis Duffy, Fairfax, Va., for defendants Robert L., Jos. D. and Carol Ann Holding Riveas.

## MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

Metropolitan Life Insurance Company brings this complaint for interpleader and declaratory relief under §§ 1331, 1335, 1397 and 2361, 28 U.S.C., and § 8705, 5 U.S.C., to determine which of the defendants are entitled to the proceeds of the insurance on the life of Robert P. Holding under Group Policy No. 17000–G.

Robert P. Holding died on or about March 3, 1967 without having designated a beneficiary for the proceeds of the said insurance policy.

Section 11 of the group policy provides that if there be no designated beneficiary as to all or any part of the insurance, then the amount thereof shall be payable to the following persons surviving at the date of the insured's death, in the following order of precedence: (1) to the widow of the insured; (2) if none, then to the children of the insured.

The amount payable under the policy, namely, $19,000.00, has been deposited in the registry of the Court.

Robert P. Holding entered into a marriage ceremony with Lynn T. Holding in Marseilles, France, on April 8, 1946. He was then legally married to Dorothy E. Holding of Michigan. Their then pending divorce was not granted by the Michigan courts until May 20, 1946. Children were born of both unions.

Robert and Lynn Holding lived together as husband and wife in France, Germany, Virginia, Florida, Ohio and in Southeast Asia from the date of the French ceremony to the date of Robert Holding's death. He was then a resident of and domiciled in the State of Virginia.

Lynn Holding did not know that the French marriage was void until after Robert Holding's death. She then discovered the Michigan divorce decree in their joint bank box and learned for the first time that Robert Holding's divorce from Dorothy Holding was not effective until May 20, 1946.

Robert Holding had reason to believe he could legally remarry on April 8, 1946 (the date of the French marriage ceremony). He had requested the date that his pending divorce would become final from his former wife's Michigan attorney in January of 1946 and was advised by letter that the final divorce would be granted any time after ninety days from December 19, 1945. He so advised his commanding officer in his request for permission to marry Lynn Holding—he was then a member of the United States military forces stationed in Germany.

Robert Holding did not formally remarry Lynn Holding after removal of his impediment. They continued to live together as husband and wife and held themselves out as such.

Lynn Holding contends that by so doing they thereby created a valid common law marriage and that she is the lawful widow of Robert P. Holding and as such is entitled to the proceeds from the group insurance policy on his life. We agree, and an order so decreeing will be entered herein.

From the record here made, it is clear that Robert Holding upon completion of his military duties entered the foreign service of the United States in 1946. He was assigned to and remained in Europe until April 26, 1958. Robert and Lynn Holding then returned to the United States with their children and lived in Falls Church, Virginia, as man and wife until September of 1958. Robert Holding was then assigned to Southeast Asia in the foreign service of the United States. He took his family and lived with them in Laos until June of 1966. The family then returned to the United States and bought a home in Annandale, Virginia, and lived there as a family unit until Robert Holding died March 3, 1967.

While living in Virginia in 1958, the Holdings, holding themselves out as husband and wife, visited friends in various parts of the United States, including a two-week stay in Florida. Upon Mr. Holding completing three years' duty in Southeast Asia, the Holding family returned to the United States on leave in 1961. They then visited Mr. Holding's sister in Ohio, and then took a cottage in Florida for a month. They then moved to Columbus, Ohio, for a month while Mr. Holding was taking a course at Ohio State University. The family then returned to Southeast Asia and there remained until 1964, when they again returned to the United States on a

three-month leave. They again as a family unit visited numerous friends residing in various parts of the United States, including Florida and Ohio.

The United States Army recognized Lynn Holding as the wife of Robert P. Holding from on and after the date of their French ceremonial marriage (April 8, 1946) as evidenced by military travel papers filed herein; she was naturalized as a United States citizen on August 12, 1958 by virtue of a summary proceeding provided her as the wife of a United States citizen; she was issued a United States passport as the wife of Robert Holding; she was listed as the wife of Robert P. Holding in an insurance policy dated April 1, 1965.

Robert P. Holding and Lynn T. Holding filed federal income tax returns listing themselves as husband and wife. Robert Holding made his wife, Lynn T. Holding, a beneficiary under his will and appointed her executrix of his last will and testament made in Van Wert, Ohio, on August 30, 1958.

■ Although common law marriages are void in Virginia if celebrated there, they will be recognized by Virginia if consummated in a state where valid and are between parties not forbidden to marry under Virginia law. See 12 Michie Jurisprudence, Marriage § 8, and cases cited therein.

■ Common law marriages are void in France if celebrated there.

■■ The elements necessary to establish a common law marriage in Florida are (1) capacity of the parties to contract and (2) their present mutual assent to contract. Mutual assent may be established by habit or repute, which is defined as cohabitation as man and wife. See In Re Estate of Alcala, Fla. App., 188 So.2d 903 (1966).

■ Ohio places emphasis on one's status in the community, such as being received in society and being accepted by friends and relatives as husband and wife—such cohabitation and repute are presumably matrimonial as distinguished from the occasional hidden and limited cohabitation which marks the meretricious relation. See Williams v. Williams, Ohio App., 106 N.E.2d 655 (1951).

■ Neither Florida nor Ohio prescribes any minimum or maximum periods of residence as man and wife as a prerequisite to the creation of a common law marriage. Florida, in Jones v. Jones, 119 Fla. 824, 161 So. 836, 104 A. L.R. 1 (1935), held that a valid common law marital status came into being immediately following the removal of a pre-existing legal impediment, provided there is a continued cohabitation as man and wife thereafter.

It was held in Albina Engine and Machine Works v. O'Leary, 9 Cir., 328 F.2d 877 (1964), that annual weekly visits to Idaho from Oregon were sufficient. Tennessee, in Madewell v. United States, D.C., 84 F.Supp. 329 (1949), held that cohabitation for a number of days by non-domiciliaries in Alabama was sufficient to establish a common law marriage after the removal of an existing impediment. See also Ventura v. Ventura, 53 Misc.2d 881, 280 N.Y.S.2d 5 (1967), where cohabitation for three days by a New Yorker while visiting in Georgia was sufficient to establish a common law marriage after the removal of an existing impediment.

■ The public policy of Virginia is to uphold the validity of a marriage if at all possible. See De Ryder v. Metropolitan Life Insurance Company, 206 Va. 602, 145 S.E.2d 177 (1965).

■ The common law marriage of Robert P. Holding and Lynn T. Holding was not between parties forbidden to marry by Virginia law. Knowledge of the impediment by both parties will prevent any implementation of the common law marriage under the Fourth Circuit ruling in Bell v. Tug Shrike, 332 F.2d 330 (1964). However, knowledge of the impediment by one of the parties is not sufficient to prevent a common law marriage. Smith v. Reed, 145 Ga. 724, 89 S.E. 815 (1916). Such is the situation here. Lynn Holding had no knowl-

edge of the impediment preventing her from legally marrying Robert Holding on April 8, 1946 until after the date of his death in 1967. Likewise, Robert Holding did not know of the impediment at the time of the French marriage. He then had the right to believe that his former wife's Michigan divorce had been granted.

■ From the findings here made, this Court concludes that a valid common law marriage was consummated between Robert P. Holding and Lynn T. Holding by virtue of their living together as man and wife in Florida and in Ohio during 1961 and by holding themselves out as such thereafter wherever they lived, and that Lynn T. Holding is in fact and in law the widow of the late Robert P. Holding.

■ The defendant's claim for interest on the proceeds of the insurance policy from the date of Robert P. Holding's death will be denied. There is no provision in the policy for the payment of interest and there was a bona fide controversy between the claimants to the proceeds justifying the insurance carrier in withholding payment until the matter was brought before a court of competent jurisdiction for adjudication. The proceeds of the policy have been deposited in the registry of the Court since the filing of the suit herein.

■ The insurance carrier's claim for counsel fees and costs incurred in this interpleader action will also be denied. Such allowances are within the discretion of the Court. See Stuyvesant Insurance Company v. Dean Construction Company, 254 F.Supp. 102 (D.C.N.Y.1966). The defendant Holding first brought suit against the insurance carrier in the Corporation Court for the City of Alexandria. The insurance carrier did not there defend for reasons best known to itself. It encouraged the defendant to dismiss that suit so that it could institute this interpleader proceeding in this Court.

This Court, in line with the reasoning of the Second Circuit in Travelers Indemnity Company v. Israel, 354 F.2d 488 (1965), concludes that the filing of this interpleader proceeding by the insurance carrier was a part of its ordinary course of doing business.

The guardian ad litem will be awarded a fee of $350.00 for services rendered in representing the infant defendants, said fee to be taxed as a part of the costs and to be paid out of the proceeds from the policy in question, now in the registry of this Court. The balance of the proceeds in the registry of the Court will be paid to the defendant, Lynn T. Holding, and her attorney.

Counsel for Lynn T. Holding should prepare an appropriate order in accordance with this memorandum opinion, submit it to all other counsel of record for approval as to form, and then to the Court for entry.

The Clerk will send a copy of this memorandum opinion to all counsel of record.